

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-17-1994

# United States of America v. Woods

Precedential or Non-Precedential:

Docket 93-1432

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"United States of America v. Woods" (1994). *1994 Decisions.* Paper 18.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/18

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

NO. 93-1432
_____


UNITED STATES OF AMERICA,

Appellee

v.

ALAN WOODS,

Appellant
_____

On Appeal From the United States District Court
For the Eastern District of Pennsylvania
(D.C. Crim. No. 91-00441-01)
_____


Submitted Under 3rd Cir. LAR 34.1(a)
April 11, 1994

Before:  BECKER, MANSMANN, and SCIRICA, Circuit Judges.

(Filed:  May 17, l994 )


_____

**OPINION OF THE COURT**
_____


MICHAEL R. STILES
United States Attorney
WALTER S. BATTY, JR.
Assistant U.S. Attorney
Chief of Appeals
TERRI A. MARINARI
FREDERICK A. TECCE
Assistant U.S. Attorneys
615 Chestnut Street
Suite 1250
Philadelphia, PA  19106

Attorneys for Appellee

1

ROBERT J. O'SHEA, JR.
George W. Howard, III, P.C
1608 Walnut St.
Suite 1700
Philadelphia, PA 19103

Attorney for Appellant

BECKER, Circuit Judge.

This is a Guidelines Sentencing appeal.  Appellant Alan Woods was sentenced under the United States Sentencing Guidelines for his involvement in two armored truck robberies.  At sentencing, the district court gave Woods a two level increase in his sentence for obstruction of justice because Woods had given the government misleading information in an effort to avoid implicating two friends in a third armored truck robbery.  Woods argues that because the misleading information did not impede or obstruct the investigation or prosecution of the offenses for which he was convicted, neither an upward adjustment for "obstruction of justice" under § 3C1.1 nor a departure under §5K2.0 was permissible under the Guidelines.  Because of the manner in which the Guidelines are written in this area, we feel constrained to agree with Woods, and hence, albeit reluctantly, we vacate the judgment of sentence and remand for resentencing.

I.   BACKGROUND

From August 1990 until July 1991, Woods took part in a series of robberies of armored trucks in and around Philadelphia. In September 1991, a grand jury indicted Woods for the robbery of

2

a Brooks armored truck outside the Temple University Hospital in Philadelphia (the "Temple robbery").[1] On February 7, 1992, one day after the trial began, Woods entered a guilty plea in which he admitted participating not only in the Temple robbery but also in another armored truck robbery at Amtrak 30th Street Station (the "Amtrak robbery"), also in Philadelphia.

The plea agreement provided that Woods would provide the government information about any other person who was involved in the Temple robbery, the Amtrak robbery, and "any other robberies or crimes [of] which he has knowledge." The agreement also provided that "if the government determines that the defendant has not provided full and truthful cooperation . . . the agreement may be voided by the government and the defendant shall be subject to prosecution for any federal crime which the government has knowledge including . . . perjury, obstruction of justice, and the substantive offenses arising from this investigation."

Woods then began supplying the FBI with information about the Temple and Amtrak robberies. He also told the FBI about two other armored truck robberies, one at a branch of the Liberty Bank and another at a Pathmark Supermarket. He later gave this same information during his testimony before a grand jury.

---

[1] The indictment alleged both a substantive violation of the Hobbs Act, 18 U.S.C. § 1951 (conduct that "obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery"), and conspiracy.

Woods' descriptions of the Temple, Amtrak, and Pathmark robberies were substantially the same as those given by other cooperating witnesses. Woods' description of the Liberty Bank robbery, however, was significantly different. To begin with, Woods denied his involvement in the Liberty Bank robbery, claiming that he had been at home when it occurred. In fact, Woods had been in a vehicle circling the vicinity of the robbery and was at the "switch site" acting as a lookout. More importantly for purposes of this appeal, however, Woods consistently denied that two friends of his, William Edney and Earl Glenn, were involved in the crime. The FBI later found out, however, that both Edney and Glenn had participated in the robbery, eventually gathering enough evidence to prosecute them. But Woods' conduct delayed that prosecution for eight months.

At Woods' sentencing hearing the district court heard testimony about Woods' conduct during the investigation of the Liberty Bank robbery. The district court found that Woods had made materially false statements to the FBI and grand jury, whereupon it concluded that "the defendant 'obstructed justice' by providing materially false statements to the FBI and by committing perjury before the grand jury." The court then increased the defendant's offense level two levels "pursuant to either § 5K2.0 or § 3C1.1." This appeal followed, in which Woods argues that the two level increase was inappropriate either as an upward adjustment pursuant to § 3C1.1 or as an upward departure pursuant to § 5K2.0.

## II. DISCUSSION

4

A. Section 3C1.1, "Obstruction of Justice"

Section 3C1.1 of the Guidelines provides:

> If the defendant willfully obstructed or
> impeded, or attempted to obstruct or impede
> the administration of justice during the
> investigation, prosecution, or sentencing of
> the instant offense, increase the offense
> level by 2 levels.

U.S.S.G. § 3C1.1 (1993) (emphasis added). Although this language could be read to allow an upward adjustment whenever the defendant obstructs the investigation or prosecution of any offense during the investigation, prosecution, or sentencing of the offense for which the defendant was convicted, we have squarely held that this adjustment applies only when the defendant has made efforts to obstruct the investigation, prosecution, or sentencing of the offense of conviction. United States v. Belletiere, 971 F.2d 961, 967 (3d Cir. 1992) ("Section 3C1.1 applies to willful obstruction or attempt to obstruct 'the administration of justice during the . . . sentencing of the instant offense.' 'Any interpretation other than that § 3C1.1 refers to efforts to obstruct the prosecution of the conviction offense would only render this modifier meaningless.'" (citation omitted) (emphasis in original)); accord United States v. Levy, 992 F.2d 1081, 1084 (10th Cir. 1993) (obstruction must be of the offense of conviction).

Woods pled guilty to the Temple and Amtrak robberies. He did not, however, plead guilty to the Liberty Bank robbery.

5

Indeed, he was never even indicted for that crime. Thus Woods made no efforts to obstruct the investigation, prosecution, or sentencing of the offense of conviction, and any enhancement pursuant to § 3C1.1 was inappropriate.[2] We therefore turn to the question whether an upward departure was appropriate.

### B. Section 5K2.0 Upward Departure

Section 5K2.0 provides that the sentencing court may depart from the guidelines if it finds:

> that there exists an aggravating or
> mitigating circumstance of a kind, or to a
> degree, not adequately taken into
> consideration by the Sentencing Commission in
> formulating the guidelines that should result
> in a sentence different from that described.

---

[2]The district court tried to avoid Belletiere by stating that

> [t]he language of § 3C1.1 makes it clear that it does
> apply to obstruction of justice "during . . .
> sentencing of the instant offense." There appears to
> be at least three cases which make it clear that a
> defendant who perjures himself at the sentencing
> hearing, triggers an increase in offense level of two
> levels for willfully obstructing justice. [United
> States v. Goldfaden, 987 F.2d 225 (5th Cir. 1993);
> United States v. Hamilton, 929 F.2d 1126 (6th Cir.
> 1991); and United States v. Hassan, 927 F.2d 303 (7th
> Cir. 1991)]. The issue presented in this case is
> whether this defendant willfully obstructed justice
> during the sentencing of the instant offense by
> providing materially false statements to the FBI and
> the grand jury in violation of his plea agreement . . .
> .

The cases cited by the district court, however, all involved situations in which the defendant interfered with the prosecution and sentencing of the offense of conviction. Goldfaden, 987 F.2d at 227; Hamilton, 929 F.2d at 1130; Hassan, 927 F.2d at 309. They do not stand for the proposition that any false statement made during sentencing may trigger the adjustment.

6

U.S.S.G. § 5K2.0 (quoting 18 U.S.C. § 3553(b)) (internal quotations omitted). Woods' obstruction of justice, relating as it did to serious crimes, was itself quite serious, and it would seem that he deserved the two-level upward adjustment notwithstanding that it did not fall within the ambit of § 3C1.1. The putative (and quite plausible) ground for an upward departure would be his false statements to the government, resulting in obstruction of justice in connection with an investigation other than for the offense of conviction but related to it.

The problem with this approach, however, is that the Commission ostensibly considered such situations when fashioning § 3C1.1 of the Guidelines. The Application Notes of § 3C1.1 contain a non-exhaustive list of examples of conduct to which the adjustment applies, including:

> (b) committing, suborning, or attempting to suborn perjury; [and]
>
> . . .
>
> (g) providing a materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the instant offense[.]

U.S.S.G. § 3C1.1, Application Note 3(b) & (g). Application Note 4 supplements that list with "a non-exhaustive list of examples of the types of conduct that, absent a separate count of conviction for such conduct, do not warrant application of this enhancement, but ordinarily can appropriately be sanctioned by the determination of the particular sentence within the otherwise applicable guideline range." U.S.S.G. § 3C1.1, Application Note

7

4 (emphasis added).  One example of conduct that does not warrant an obstruction of justice adjustment is "making false statements, not under oath, to law enforcement officers, unless Application Note 3(g) above applies."  U.S.S.G. § 3C1.1, Application Note 4(b).  The Commission thus appears to have considered false statements like those involved here, and elected not to punish them as part of the conviction for the instant offense.

Woods basically made two types of false statements when he tried to throw the FBI off the trail of his friends:  ones to the grand jury, and ones to the FBI agents in interviews during their investigation of the crimes.  His lies to the grand jury were, of course, perjury, but perjury is adequately taken into account by Application Note 3(b).  His lies to the FBI agents during the interviews were not perjury, but fell into the category of statements considered by Application Notes 3(g) and 4(b), both of which consider the appropriateness of an upward adjustment when the defendant makes false statements to investigating officers.  Together they demonstrate that an adjustment is appropriate only when the statements made by the defendant obstruct the prosecution of the "instant offense," which, as we have said in Belletiere, is limited to the offense of conviction.  The Commission has apparently decided that an upward adjustment for false statements to law enforcement officers not pertaining to the offense of conviction would not be appropriate.  The district court's departure was therefore impermissible.

8

The result we reach is regrettable. We believe that Woods should have been punished for the harm that he caused in misleading the government and the grand jury. Woods cut a deal with the government apparently to avoid prosecution for the five or six other armored truck robberies in which he may have been involved. As a critical part of his plea bargain, he agreed to cooperate with the FBI's investigation into the other robberies, including the Liberty Bank robbery. He not only provided little help as part of the agreement, but his false statements held up a government investigation eight months and potentially shielded two members of the robbery ring from prosecution. By all accounts, Woods' conduct amounted to an obstruction of justice.

But we are bound by the language of § 3C1.1 and its application notes. We do not fully understand the basis for the Commission's limitation on the use of obstruction of justice.[3] We

---

[3]As far as we can tell, the obstruction of justice adjustment appears to be limited to conduct obstructing the "instant offense" because the Commission wanted to protect the defendant's right against self incrimination, see U.S.S.G. § 3C1.1, Application Note 1, and believed that minor lies about other crimes could be adequately into account within the applicable guideline range, see U.S.S.G. § 3C1.1, Application Note 2. Neither of these concerns would be implicated when a defendant misleads police officers about crimes for which he might have used a plea agreement to insulate himself from prosecution. As a result, there seems to be little reason not to give an enhancement under such circumstances.

One possible explanation for the outcome in this case would be that § 3C1.1 is not meant to affect the plea bargaining process and therefore is not meant to remedy breaches of plea agreements. Cf. U.S.S.G. § 3C1.1, Application Note 1 (refusal to enter a plea is not a basis for application of this provision). The Commission might have felt that breaches of plea agreements are best dealt with in other ways. For example, the government could have rescinded the agreement and prosecuted Woods on the crimes mentioned in the plea agreement as well as for the other

9

urge the Commission to redraft the section to make the adjustment applicable in a case such as this one, or, at the very least, to clarify why it should not be applicable.[4]

The judgment of the district court will be reversed, and the case remanded for resentencing consistent with this opinion.

---------------------------

---

robberies, perjury, and obstruction of justice. In this case the government chose not to take such action and instead sought only the upward departure. See Government's Sentencing Memorandum at 11 ("the government has decided to merely seek the upward departure described herein rather than pursue additional prosecutions"). But such an option was possible (and indeed may remain).

[4]We note that this suggestion accords with the clear import of the Sentencing Reform Act and the Guidelines themselves. The Guidelines are part of an evolutionary process, see United States Sentencing Commission Annual Report 5 (1991), and should be informed by rulings of the District Courts and Court of Appeals, particularly in the area of departures, for they play a critical role in the ongoing process begun by the Sentencing Reform Act. The Commission has invited the federal bench to comment on glitches in the Guidelines and the need for revision so that it may amend the guidelines appropriately. See U.S.S.G. Ch. 1 Pt. A §§ 4(b), 5 (emphasizing that the Commission will review cases to pinpoint where revisions are appropriate); cf. United States v. Blackston, 940 F.2d 877, 893 (3d Cir. 1991) (pointing out that the Commission sought feedback from judges with respect to the question of revocation of probation and supervised release), cert. denied, 112 S. Ct. 611, 116 L. Ed. 2d 634 (1991); see also 28 U.S.C. § 994(o) ("the Commission shall consult with authorities on . . . various aspects of the Federal criminal justice system").