UNITED STATES COURT OF APPEALS

FIFTH CIRCUIT

No. 94-50472

UNITED STATES OF AMERICA,
                    Plaintiff-Appellee,

versus

WILLIAM J. KIRK,
                    Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Texas

November 7, 1995

Before POLITZ, Chief Judge, and JONES and PARKER, Circuit Judges.

ROBERT M. PARKER:

The appellant, William J. Kirk, entered a conditional guilty plea in the district court to one count of unlawful possession of a machinegun under 18 U.S.C. § 922(o).[1] On appeal, Kirk challenges the indictment and the district court's sentence calculation. Finding no error, we affirm.

I.  FACTS

On September 1, 1988, Kirk offered to sell a machinegun to Donald Mueller.  From September 1988 through January 4, 1989, Kirk attempted to sell various unregistered machineguns to Mueller.  On

---

    1.  "Machinegun" is defined in 26 U.S.C. § 5845(b) as "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger."

January 4, 1989, Kirk agreed to sell Mueller an M-16 machinegun for $1,200.00. Mueller then went with Kirk to a rifle range in Dripping Springs, Texas where they obtained certain parts necessary for a machinegun conversion. Kirk used the parts to convert a semi-automatic EA Company Rifle, .223 caliber, model J-15, to a machinegun. Kirk and Mueller test-fired the converted machinegun with blank ammunition, and the transaction was completed.

On February 12, 1989, Kirk made arrangements with Mueller to sell him an UZI machinegun for $1,100.00 in cash plus a $900.00 commercial welder. On February 21, 1989, at the same rifle range, the cash and welder were exchanged for an Action Arms Limited UZI carbine, Model A, 9 millimeter bearing serial number SA32084, which had been converted to a machinegun by the addition of an UZI machine bolt. Mueller test-fired the UZI in the fully automatic mode. John M. Clark accompanied Mueller on February 21 and witnessed the transaction. Apparently, through Mueller's cooperation, a number of the meetings and conversations between Kirk and Mueller were monitored by the Bureau of Alcohol, Tobacco and Firearms.

Kirk was arrested November 28, 1989. He was charged with firearms violations in eight counts of a ten-count superseding indictment. On the day trial was scheduled, Kirk pled guilty to one count, charging unlawful possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d). Kirk appealed his conviction, arguing that section 5861 had been implicitly repealed by the passage of 18 U.S.C. § 922(o). Based on authority from other

2

circuits supporting Kirk's argument, the parties jointly moved to remand the case to the district court for dismissal of the conviction under Rule 48(a) of the Federal Rules of Criminal Procedure.[2]

After the first conviction was set aside, Kirk was charged on December 21, 1993 in a four-count indictment with violations of 18 U.S.C. § 922(o): unlawful possession of a machinegun on January 4, 1989 (Count One); unlawful transfer of a machinegun on January 4, 1989 (Count Two); unlawful possession of a machinegun on February 21, 1989 (Count Three); and unlawful transfer of a machinegun on February 21, 1989 (Count Four). Kirk filed a motion to dismiss the indictment, arguing that section 922(o) was unconstitutional because it exceeded the power of the federal government under the Commerce Clause and because the indictment failed to allege a connection with interstate commerce. Kirk also challenged his prosecution on the basis of the plea agreement entered in the first prosecution and on the basis of double jeopardy. The district court overruled these contentions. Kirk entered a conditional guilty plea to count one of the indictment, preserving the right to appeal the district court's rulings.

Kirk was sentenced on June 24, 1994. In calculating Kirk's sentencing range under the sentencing guidelines, the district court increased the defendant's offense level for obstruction of

---

2. FED. R. CRIM. P. 48(a) provides, in relevant part, "The Attorney General or the United States attorney may by leave of court file a dismissal of an indictment, information or complaint and the prosecution shall thereupon terminate."

justice. The district court sentenced Kirk to a term of imprisonment of twelve months and one day, a term of supervised release of three years, a fine of $3,000.00 and a special assessment. The defendant timely filed this appeal.

## II. DISCUSSION

### A.

Kirk first contends that the district court erred in denying his motion for specific performance of his prior plea agreement. Kirk claims that as part of the first plea agreement in 1991, the government promised that if Kirk were successful on appeal, it would not bring a subsequent prosecution based on the same conduct. Thus, Kirk argues, the subsequent prosecution was barred by that prior agreement.

If a plea agreement exists, and a plea of guilty has been in some way induced by a promise, it is essential to the fairness of the proceeding that the promise be fulfilled. *Santobello v. New York*, 404 U.S. 257, 262, 92 S. Ct. 495, 499 (1971). This circuit requires the government to strictly comply with the agreements it makes with defendants. *United States v. Chagra*, 957 F.2d 192, 194 (5th Cir. 1992). A court's inquiry regarding whether a particular promise induced a guilty plea does not necessarily end with a reading of the written agreement. Evidence of discussions surrounding the negotiations of the written agreement may establish the existence of a promise. *United States v. Williams*, 809 F.2d 1072, 1079 (5th Cir. 1987), *cert. denied*, 484 U.S. 896 (1987). We

4

will reverse a district court's findings in this regard only if clearly erroneous. *Id.*

At a hearing in the district court, Kirk testified that at the time he was deciding to plead guilty in 1991, the assistant U.S. attorney told him that he could appeal his conviction based on the constitutionality of the statute, and that if he was successful the government would not bother him any more. However, the AUSA, Gerald Carruth, testified that there was no agreement not to pursue other charges if the conviction did not stand up. In fact, Carruth testified that at no time did the government agree to "give up" if Kirk's appeal was successful.

The written plea agreement presented in January 1991 contained only the agreement to dismiss the other charges at sentencing and the standard language regarding the government's right to proceed with prosecution should the defendant withdraw his guilty plea prior to sentencing. The written agreement contained no promise not to re-prosecute in the event Kirk's appeal was successful. The record on appeal also reveals that at the plea hearing held January 23, 1991, after the plea agreement was presented to the district court, the court inquired "Has anyone made any promise to you other than the plea agreement that induced you to plead guilty?" The defendant responded "No, sir."

The district court found, based on the evidence presented, that the defendant entered into the first plea agreement because of the strength of the evidence against him, including recorded conversations, and not because of any promise not to prosecute in

5

case of a successful appeal. In addition, the district court found that the defendant had not established by a preponderance of the evidence that AUSA Carruth made the alleged promise. This finding was based on the testimony of the defendant and the attorneys involved and necessarily depended on an evaluation of credibility by the district court.

"It is not this Court's function to pass on a district court's determination regarding the credibility of witnesses." *United States v. Alaniz-Alaniz*, 38 F.3d 788, 791 (5th Cir. 1994), *cert. denied*, 115 S. Ct. 1412 (1995). Given the testimony of the parties, there were two permissible views of the evidence. The district court chose one view based on its ability to weigh the evidence and evaluate the credibility of the witnesses. Under these circumstances, we cannot hold that the district court's findings are clearly erroneous.

B.

The appellant next argues that his prosecution under section 922(o) violated his rights under the Double Jeopardy Clause of the Fifth Amendment because he had been placed in jeopardy for the same conduct in the previous prosecution under 26 U.S.C. § 5861(d). As noted above, the instant prosecution under section 922(o) was not commenced until after the prosecution under 26 U.S.C. § 5861(d) was dismissed because of a perceived infirmity.[3]

---

3. The government decided the initial prosecution should be dismissed based on the Tenth Circuit's holding in *United States v. Dalton*, 960 F.2d 121 (10th Cir. 1992) that the enactment of 18 U.S.C. § 922(o) implicitly repealed 26 U.S.C. § 5861(d). This Court subsequently disagreed with the Tenth Circuit on this

The Double Jeopardy Clause provides that no person shall "be twice put in jeopardy of life or limb" for the "same offence." U.S. CONST. amend. V.

> It has long been settled, however, that the Double Jeopardy Clause's general prohibition against successive prosecutions does not prevent the government from retrying a defendant who succeeds in getting his first conviction set aside, through direct appeal or collateral attack, because of some error in the proceedings leading to the conviction.

*Lockhart v. Nelson*, 488 U.S. 33, 38, 109 S. Ct. 285, 102 L. Ed. 2d 265 (1988).  The exception to this rule, not applicable in this case, is that if the defendant succeeds in having his first conviction set aside on the ground that the evidence presented was insufficient, a re-prosecution is barred because the defendant was entitled to an acquittal at the first trial.  *Lockhart*, 488 U.S. at 39, 109 S. Ct. at 290; *Burks v. United States*, 437 U.S. 1, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978).

The first prosecution in the present case was set aside not by a court's determination that there was error, but by agreement of the parties that, according to persuasive authority, the statute under which Kirk was convicted had been implicitly repealed.  This is the type of trial error to which the general rule of *Lockhart* applies.  It makes no difference that this Court's review of the first conviction was preempted by motion of the government under Rule 48 of the Federal Rules of Criminal Procedure.  Thus, the prosecution of Kirk under 18 U.S.C. § 922(o), after a prosecution

---

question in *United States v. Ardoin*, 19 F.3d 177 (5th Cir.), *cert. denied*, 115 S. Ct. 327 (1994).

7

dismissed for a perceived "defect in the charging instrument," does not offend the Double Jeopardy Clause.  *See Montana v. Hall*, 481 U.S. 400, 403, 107 S. Ct. 1825, 1827, 95 L. Ed. 2d 354 (1987).[4]

## C.

Kirk also challenges his conviction on the ground that 18 U.S.C. § 922(o) is unconstitutional.  Section 922(o) provides, in relevant part,

> (o)(1) Except as provided in paragraph (2), it shall be unlawful for any person to transfer or possess a machinegun.
>
> (2) This subsection does not apply with respect to --
> * * *
> (B) any lawful transfer or lawful possession of a machinegun that was lawfully possessed before the date this subsection takes effect.

The effective date of this provision was May 19, 1986.  Kirk contends that this section is unconstitutional because it is beyond the authority granted to Congress under the Commerce Clause.  We must analyze this contention in light of the Supreme Court's recent pronouncement in *United States v. Lopez*, 115 S. Ct. 1624, 131 L. Ed. 2d 626 (1995).[5]

In *Lopez*, the Supreme Court addressed the constitutionality of the Gun Free School Zones Act of 1990, 18 U.S.C. § 922(q).  Section 922(q) made it unlawful "for any individual knowingly to possess a

---

4.    On this point, we agree with the Tenth Circuit.  *See United States v. Dalton*, 990 F.2d 1166 (10th Cir.), *cert. denied*, 114 S. Ct. 253 (1993).

5.    In addition, to the extent not inconsistent with the Supreme Court's pronouncement, we are bound by our opinion in *Lopez* as the law of the circuit.  *United States v. Lopez*, 2 F.3d 1342 (5th Cir. 1993).

8

firearm at a place that the individual knows, or has reasonable cause to believe, is a school zone."  The Supreme Court affirmed this Court's ruling that section 922(q) was beyond the scope of the Commerce power, and thus was unconstitutional.

In evaluating section 922(q)'s constitutionality, the Supreme Court described three categories of activity which Congress could regulate under the Commerce Clause:[6] (1) the use of the channels of interstate commerce; (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities"; and (3) activities which have "a substantial relation to interstate commerce . . . i.e., those activities that substantially affect interstate commerce."  *Lopez*, 115 S. Ct. at 1629-30.  The Court held that section 922(q) did not fall within the first two categories because it did not regulate the channels or instrumentalities of interstate commerce.  Thus, the Court evaluated section 922(q) under the third category to determine whether it was a regulation of an activity that substantially affected interstate commerce.

The Supreme Court held that section 922(q) "by its terms has nothing to do with `commerce' or any sort of economic enterprise, however broadly one might define those terms."  *Id.*, 115 S. Ct. at 1630-31.  The Court also held that "possession of a gun in a local school zone is in no sense an economic activity that might, through

---

6.  "The Constitution delegates to Congress the power `[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes.'"  *Lopez*, 115 S. Ct. at 1626.

9

repetition elsewhere, substantially affect any sort of interstate commerce." *Id.*, 115 S. Ct. at 1634. Thus, the Court found section 922(q) unconstitutional under the Commerce Clause.

Although *Lopez* is instructive regarding the proper Commerce Clause analysis, it does not control the result in our analysis of section 922(o). We are not the first court to address section 922(o) in light of *Lopez*. In this regard, we have the benefit of the Tenth Circuit's opinion in *United States v. Wilks*, 58 F.3d 1518 (10th Cir. 1995). The *Wilks* court held that "unlike § 922(q), § 922(o) embodies a proper exercise of Congress' power to regulate `things in interstate commerce' -- i.e., machineguns." *Id.* at 1521. "The interstate flow of machineguns," the court said, "`not only has a substantial effect on interstate commerce; it is interstate commerce.'" *Id.* (quoting *United States v. Hunter*, 843 F.Supp. 235, 249 (E.D. Mich. 1994). We agree.

It is particularly important to our determination that section 922(o) prohibits the private possession or transfer of machineguns only if they were not lawfully possessed prior to May 19, 1986. 18 U.S.C. § 922(o). Thus, transfer or possession of a machinegun is unlawful under this section only if it was manufactured or illegally transferred after May 19, 1986. It is clear, therefore, that the activity Congress intended to prohibit by application of section 922(o) was the introduction into the stream of commerce machineguns manufactured, imported, or otherwise illegally obtained, after the effective date of the act. When read as a whole, it is plain that the activities prohibited by section 922(o)

10

constitute commerce.[7]  We recognized the difference between this regulation and the Gun Free School Zones Act in our opinion in *United States v. Lopez*, 2 F.3d 1342 (5th Cir. 1993):

> Section 922(o) is restricted to a narrow class of highly destructive, sophisticated weapons that have been either manufactured or imported *after* enactment of the Firearms Owners Protection Act, which is more suggestive of a nexus to or affect on interstate or foreign commerce than possession of any firearms whatever, no matter when or where originated, within one thousand feet of the grounds of any school.

2 F.3d at 1356 (emphasis in original; footnote omitted).

Defendant Kirk attempts to avoid section 922(o)'s relation to interstate commerce by characterizing the alleged "crime" in this

---

7.   The dissent contends that we have misconstrued the plain language of the statute in coming to this conclusion.  Rather than considering the scope of the prohibition in section 922(o), the dissent prefers to discuss mere *possession* in a vacuum.  The dissent attempts to justify its narrow perspective by noting that the offense of conviction implicated only unlawful possession, an offense distinct from unlawful transfer thanks to a disjunctive connector.  The true indicator of the statute's scope, however, is found not in subsection (1), but in subsection (2) which excludes certain transfers and possessions from the prohibitions found in subsection (1).

Following the dissent's approach, viewing similar prohibitions against mere possession in isolation, we would be required to strike down other federal criminal statutes that thus far have been upheld.  See, for example, 21 U.S.C. §844(a) (prohibiting simple possession of controlled substances in context of broader prohibitions against manufacture or distribution of same in the Drug Abuse Prevention and Control Act); 21 U.S.C. §843(a)(5) (prohibiting possession of equipment designed to mark or label counterfeit drugs in context of prohibition against making or distributing same); 18 U.S.C. § 2342(a) (prohibiting possession of contraband cigarettes in context of broader prohibition against commercial transfer of same).  See also 18 U.S.C. §842(j) (prohibiting "mere" storage of any explosive material in a manner not conforming to federal regulations in context of federal restrictions on manufacture, import, purchase, and distribution of same).

11

case as "mere possession" of a machinegun.[8]   At the same time, however, Kirk challenges the constitutionality of section 922(o) on its face.   In evaluating this type of challenge, we must necessarily consider the scope of section 922(o).   As noted above, the "possession" prohibited by section 922(o) is limited to possession of machineguns not lawfully possessed before the effective date of the act.   To put it simply, there could be no unlawful possession under section 922(o) without an unlawful transfer.   In this context, the limited ban on possession of machineguns must be seen as a necessary and proper measure meant to allow law enforcement to detect illegal transfers where the banned commodity has come to rest: in the receiver's possession.   In effect, the ban on such possession is an attempt to control the interstate market for machineguns by creating criminal liability for those who would constitute the demand-side of the market, i.e., those who would facilitate illegal transfer out of the desire to acquire *mere possession*.

Thus, section 922(o) falls into the first category identified by the Supreme Court in *Lopez*: a regulation of the use of the channels of interstate commerce.   In other words, section 922(o) is a regulation which attempts "to prohibit the interstate transportation of a commodity through the channels of commerce." 115 S. Ct. at 1630.   This type of regulation is within the commerce

---

8.   The offense to which Kirk pled guilty was unlawful "possession" of a machinegun in violation of 18 U.S.C. § 922(o). The counts charging Kirk with unlawful "transfer" were dismissed pursuant to Kirk's plea bargain.

12

power even though, admittedly, some of the activity made unlawful is purely intrastate. As with federal regulation of controlled substances, *see* 21 U.S.C. § 801, *et seq.*, there is a rational basis to conclude that federal regulation of intrastate incidents of transfer and possession is essential to effective control of the interstate incidents of such traffic. Therefore, we hold that the prohibition of transfer *or possession* of post-1986 machineguns in 18 U.S.C. § 922(o) is a rational exercise of the authority granted Congress under the Commerce Clause.[9]

### D.

Finally, with regard to his sentence, Kirk argues that the district court erred in applying the enhancement for obstruction of justice under section 3C1.1 of the federal sentencing guidelines. That section provides

> If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels.

United States Sentencing Commission, Guidelines Manual, § 3C1.1 (Nov. 1994).[10] Kirk contends that the conduct for which the two

---

9. Kirk also argues that his conviction cannot be valid under the Commerce Clause because section 922(o) does not require a showing that a particular unlawful possession substantially affects interstate commerce. However, where, as here, Congress has the power to regulate a particular class of activity because of its relation to interstate commerce, there is no requirement that a substantial effect be shown in each particular case. *See United States v. Nelson*, 458 F.2d 556 (5th Cir. 1972). Because of our holding above we need not address this argument further.

10. Because of the dates of Kirk's offense conduct, and because of *ex post facto* considerations, the 1988 edition of the Guidelines Manual was used in this case. However, the text of

13

level increase was imposed was not related to the "instant offense" as required by this Guideline.

According to the Presentence Investigation Report, Kirk contacted John M. Clark after a search warrant was executed at Kirk's place of business but before he was indicted or arrested. Clark was present on February 21, 1989, when Kirk converted an UZI carbine from semi-automatic to fully automatic and test-fired the weapon at the rifle range. Kirk instructed Clark not to cooperate with authorities concerning his knowledge of these events. The offense to which Kirk pled guilty involved possession of a machinegun on January 4, 1989. Kirk argues that because Clark's knowledge of Kirk's activities did not relate specifically to this event, his attempted obstruction did not relate to the offense of conviction, and therefore did not relate to the "instant offense" as required by section 3C1.1.

Kirk cites three decisions from other circuits that support his position. *See United States v. Bagwell*, 30 F.3d 1454 (11th Cir. 1994); *United States v. Woods*, 24 F.3d 514 (3d Cir. 1994); *United States v. Perdomo*, 927 F.2d 111 (2d Cir. 1991). However, after a careful reading of section 3C1.1, we must respectfully disagree with these decisions. Instead, we find the reasoning of the Sixth Circuit persuasive.

In *United States v. Crousore*, 1 F.3d 382 (6th Cir. 1993), the court addressed the same argument Kirk presents in the present

---

section 3C1.1 as currently written does not differ in any material respect from the version applied in this case.

14

case.  In rejecting the defendant's argument, the court said

> This guideline [§ 3C1.1] applies to conduct during the investigation, prosecution, and sentencing of the instant offense, i.e., the offense for which the defendant is being sentenced under the Guidelines.
> * * *
> Whether [the defendant's] lie was about his guilt on the specific charges to which he pleaded guilty is not an issue under § 3C1.1.
> * * *
> Therefore, the test is not whether the false statement [obstruction] was about the actual crime charged, but whether it was made during the investigation, prosecution, or sentencing of the "instant offense."

1 F.3d at 385.  The court also noted that an attempt to conceal trivial or immaterial information would not warrant the obstruction enhancement.  "Material information is information that, if believed, would tend to influence or affect the issue under determination."  *Id.*

We agree with the Sixth Circuit.  The enhancement for obstruction of justice under section 3C1.1 is proper anytime the defendant has concealed or attempted to conceal information material to the investigation, prosecution, or sentencing of the instant offense.  Although this Guideline clearly contemplates a relationship between the information concealed and the offense conduct, it does not require that it be related directly to a particular offense to which the defendant pleads guilty.  To hold otherwise would make the sentencing court's ability to consider obstructive behavior dependent on the offense in a multiple-count indictment the parties choose to make the subject of a plea bargain.

It is clear in the present case that at the time Kirk

solicited Clark's aid in impeding the government's investigation, Clark's personal knowledge of the events on February 21, 1989 were material to the investigation and prosecution of the firearms offenses on which Kirk was ultimately indicted. The "instant offense" was one of those offenses. Thus, the district court's application of the 3C1.1 enhancement was not error.

## III. CONCLUSION

For the foregoing reasons, the appellant's conviction and sentence are AFFIRMED.


EDITH H. JONES, Circuit Judge, dissenting.

The United States Supreme Court returned federalism to constitutional doctrine in recently deciding, in <u>United States v. Lopez</u>, ___ U.S. ___, 115 S.Ct. 1624 (1995), that Congress exceeded its power under the Commerce Clause when it banned the possession of firearms near a school. 18 U.S.C. § 922(q)(1)(A) (1988 ed., Supp II). This case poses remarkably similar constitutional questions arising from 15 U.S.C. § 922(o), a companion provision to Section 922(q). Appellant Kirk contends that the Court's reasoning in <u>Lopez</u> also renders unconstitutional Congress's attempt, in Section 922(o), to ban[11] possession of any "machine gun"[12] that was

---

[11] One commentator, writing shortly after Section 922(o) was passed as part of the Firearms Owners' Protection Act, Pub. L. No. 99-308, 100 Stat. 449 (1986), declined to characterize this Section as a "ban" on machine gun possession, noting that possession of machine guns was still permitted "under the authority" of the United States or any lesser political subdivision or as a result of the grandfather clause for weapons "lawfully" possessed before 1986. Hardy, David T., The Firearms Owners' Protection Act: A Historical and Legal Perspective, 17 Cumberland L. Rev. 585, 668-670 (1987). Hardy, however, advocated a narrower

not "lawfully" possessed before the provision passed in 1986. Acknowledging that Lopez does not control this case, I nevertheless see no meaningful distinction between Section 922(q) and Section 922(o) as the latter applies to possession, not transfer, of machine guns. I also believe that Section 922(o) cannot be upheld as a more direct exercise of Congressional commerce power. I therefore respectfully dissent.

The majority have accurately described Lopez's recapitulation of the jurisprudence of the Commerce Clause. Thus, it is settled that the Congressional power over interstate commerce extends to (1) regulating the use of channels of interstate commerce; (2) regulating and protecting the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities; and (3) regulating intrastate activities that have a substantial effect on interstate commerce. 115 S. Ct. at 1629-30.

But while Lopez evaluated the ban of firearms near a school under the "affecting commerce" strand of jurisprudence, the majority here have concluded that the ban on possession of machine guns constitutes either a regulation of the "channels of interstate

---

construction of the statute than has been utilized by the government here; the government construes Section 922(o) to ban private possession of machine guns produced or unlawfully transferred after 1986.

[12] The term "machine gun" is defined for federal regulatory purposes in 26 U.S.C. § 5845(b). As this court's en banc opinion found, however, not all machine guns so defined are Uzis or AK-47's. They include conventional firearms that have been modified or altered by wear and tear to commence "firing when the trigger is depressed and continue[] "firing until it is released, or the weapon's supply of ammunition is exhausted." United States v. Anderson, 885 F.2d 1248, 1249, n.3 (5th Cir. 1989).

17

commerce or of things moving in interstate commerce." This analysis, in my view, misinterprets those two broad categories of Commerce Clause power and ultimately conflates them with the third. Moreover, the affecting commerce category, relied upon by the federal government's brief to this court, cannot sustain Section 922(o) under the logic of Lopez.

The fundamental mistake by the majority lies in their misconstruction of the plain language of the statute. Although the majority deem the ban on possession of "machine guns" to regulate the channels of interstate commerce or things in interstate commerce, neither Section 922(o) nor its legislative history supports that position. The statute is not limited to possession in or even affecting interstate commerce or to possession of a firearm that has traveled in interstate commerce. Rather, it criminalizes the mere private possession of a machine gun.

The majority infer from the fact that Section 922(o) prohibits "transfer" as well as "possession" that channels or things in interstate commerce were intended to be regulated. This inference seems unwarranted for two reasons. First, transfer as well as possession of a thing can be of a wholly intrastate character. Second, when the government criminalizes conduct in the disjunctive, it may prosecute separately each type of conduct disjunctively named. Thus, as in this case, possession alone is criminalized independent of any transfer of a machine gun. We need not and ought not consider here the constitutionality of the Section 922(o) restriction on transfers of machine guns.

18

The majority also seek advantage from the nature of the weapons banned and the statute's prospective scope, citing a passage from this court's decision in Lopez:

> Section 922(o) is restricted to a narrow class of highly destructive, sophisticated weapons that have been either manufactured or imported *after* enactment of the Firearms Owners Protection Act, which is more suggestive of a nexus to or effect on interstate or foreign commerce than possession of any firearms whatever, no matter when or where originated, within 1,000 feet of the grounds of any school.

2 F.3d at 1556 (emphasis in original, footnote omitted). Neither of these features of the law, however, renders it more closely or more necessarily connected to the regulation of interstate commerce. Congress's power to regulate interstate commerce does not depend on the value or dangerousness of the item regulated, but upon its connection with interstate commerce. Obviously, eggs as well as toxic chemicals can be regulated if they have the appropriate nexus to interstate commerce. Further, the grandfather clause of the ban, making it effective only after 1986, fails to enhance its relation to interstate commerce.[13] After 1986, both interstate and wholly intrastate private possessions are banned, and there are no Congressional findings that this most drastic impact upon intrastate activity, otherwise subject to local police power, was required by the ineffectiveness of prior federal machine

---

[13] The effect of the grandfather clause does, paradoxically, assure a nexus between interstate commerce and criminal possession of pre-1986 unlawfully possessed machine guns, because, as this court's Lopez opinion noted, pre-1986 regulatory laws expressly embodied a jurisdictional nexus to commerce. See Lopez, 2 F.3d at 1356, n.29.

19

gun regulation. Section 922(o), in sum, does not expressly or by necessary implication appertain to the channels of interstate commerce or to regulation of things in interstate commerce.

Because Section 922(o) reaches wholly intrastate, non-commercial possession, the provision poses the constitutional question avoided by the Supreme Court when it interpreted a federal statute criminalizing a felon's possession of a firearm. 18 U.S.C. § 1202(a); United States v. Bass, 404 U.S. 336, 92 S.Ct. 515 (1971). The government prosecuted appellant Bass without demonstrating any connection between his possession and interstate commerce, because the statute did not clearly require a nexus. Noting the ambiguity of the both the statute and legislative history concerning whether interstate commerce was jurisdictionally invoked, the Court declined to accept broad construction of the statute and "render[] traditionally local criminal conduct a matter for federal enforcement and . . . [promote] a substantial extension of federal police resources." 404 U.S. at 351, 92 S.Ct. at 524. By inferring a requirement that the possession be "in commerce or affecting commerce," the Court avoided a significant intrusion on the traditional federal-state balance. 404 U.S. at 350, 92 S.Ct. at 523. A more far-reaching intrusion on state police power is carried out by Section 922(o), but unlike Bass, no saving construction is available.

The majority do not rely on legislative history concerning Section 922(o), for there is virtually none, and it says nothing about interstate commerce. There appears to be only one

20

recorded statement by its legislative sponsor, Representative Hughes, in the Congressional Record:

> I do not know why anyone would object to the banning of machine guns.

132 Cong. Rec. H1750 (April 10, 1986) (statement of Rep. Hughes). Section 922(o) was incorporated as Section 102(9) of the Firearms Owners' Protection Act, 100 Stat. 452-53, but no other reference to it appears in the committee reports or elsewhere in legislative history, with the exception of a brief Senate colloquy concerning the scope of the exemption for government-authorized machine guns.[14]

Despite the absence of textual or legislative historical support for their interpretation, the majority conclude that Section 922(o) "is an attempt to control the interstate market for machine guns by creating criminal liability for those who would constitute the demand-side of the market . . .". Accordingly, the majority first upholds the possession ban as a regulation of the use of channels of interstate commerce. I respectfully disagree. Even accepting the majority's cause-and-effect rationale, mere intrastate possession of a machine gun is not a use of the channels of interstate commerce any more than mere intrastate possession of a basketball. Compare Heart of Atlanta Motel, Inc. v. U.S., 379 U.S. 241, 257, 85 S. Ct. 348, 357-58 (1964).

The majority also rely upon a recent Tenth Circuit case that upheld Section 922(o) as a regulation of things in commerce, i.e. interstate traffic in machine guns. U.S. v. Wilks, 58 F.3d

---

[14] See discussion of legislative history in Hardy, supra n.1, at 671-74 and n.461, 462, 463.

21

1518 (10th Cir. 1995). Decided after the Supreme Court's decision in Lopez, Wilks considered the Section 922(o) ban on machine gun possession functionally indistinguishable from previous laws, such as the 1968 Gun Control Act, which had extended federal control over interstate and foreign commerce by regulating all persons engaged in the business of importing, manufacturing, or dealing in firearms. Wilks, 58 F.3d at 1521-22. The court used the statements of Congressional findings and purposes in the previous laws to defend Congress's further step of banning private machine gun possession in Section 922(o) as if it were a part of the seamless web of regulation of the firearms business.[15] For several reasons, I must disagree with Wilks. First, none of those laws purported to ban possession of firearms unrelated to interstate commerce. Compare United States v. Bass, supra. As Judge Garwood's opinion in Lopez painstakingly demonstrates, all previous federal gun control laws have been expressly tied to the conduct of the firearms business, a business whose inter- and intra-state activities are not only commingled but clearly "commercial". See Lopez, 2 F.3d 1348-57.

Second, the overall structure and history of the Firearms Owners' Protection Act (FOPA), in which Section 922(o) originated,

---

[15]    Wilks abandoned, as it had to, the erroneous references to legislative history on which pre-Lopez opinions of the Eighth and Ninth Circuits relied in upholding Section 922(o). See United States v. Hale, 978 F.2d 1016, 1015 (8th Cir. 1992), cert. denied, ____ U.S. ____, 113 S. Ct. 1614 (1993); United States v. Evans, 928 F.2d 858 (9th Cir. 1991). These cases drew a connection between Section 922(o) and interstate commerce based upon legislative history from earlier, unpassed legislation. This court criticized such reliance in United States v. Lopez, 2 F.3d at 1356-57; the Supreme Court's decision in Lopez undermined other aspects of those courts' reasoning; and Wilks appropriately discards the discredited reasoning.

22

suggests no general Congressional determination that possession of machine guns necessarily implicates interstate commerce. Judge Garwood's opinion in Lopez explains that the Act focused on regulating transfers of firearms, including express Congressional findings that transfer by non-federal-licensees to "disqualified persons" must be controlled to prevent evasion of license regulations. Lopez, 2 F.3d 1354-55. Other amendments effected by that statute dealt with provisions which already expressed an interstate commerce nexus without diluting those requirements. Id. The preamble of the legislation expressed Congress's desire not to "place any undue or unnecessary Federal restrictions or burdens on law-abiding citizens with respect to the . . . possession or use of firearms appropriate to . . . any lawful activity. . . ." P.L. 99-308 § 100 stat. 449. Section 922(o) stands isolated from the rest of the FOPA because it conspicuously lacks either a nexus to commerce or the support of findings that banning mere intrastate possession of machine guns is essential to effectuate federal regulation.

Third, banning the possession of machine guns represents a logical extreme of federal regulation but also the negation of the pre-existing regulatory structure as to those firearms. Wilks, however, imports the same Congressional findings that regulated transfers of firearms in interstate commerce to justify banning mere possession without any link to interstate commerce. The Wilks decision leaps to fill in the logical gap between regulating activity in interstate commerce and banning a wholly local

23

intrastate action.  Surely Congress ought to have decided that its earlier attempts at regulation were ineffectual before taking this intrusive step into the police power of the states.  It is not for the courts to do so.  Compare <u>Bass</u>, <u>supra</u>, where the Court expressed concern that Congress simply did not consider the federalism implications of banning mere intrastate firearm possession.

Although <u>Wilks</u>'s point is debatable, I am persuaded that prior federal firearms statutes and Congressional findings do not speak to the subject matter of Section 922(o) or its relation to interstate commerce.  To paraphrase <u>Lopez</u>, by banning the wholly intrastate possession of machine guns, Section 922(o) plows new ground and breaks with the longstanding pattern of federal firearms legislation.  115 S.Ct. at 1632, citing <u>U.S. v. Lopez</u>, 2 F.3d at 1366.

Eliminating the "channels of commerce" and "things in commerce" bases of Commerce Clause jurisdiction espoused by the majority, Section 922(o) may only be justified as a measure that substantially affects interstate commerce.  But the analogy between <u>Lopez</u> and this case is compelling, so much so that the majority here, like the court in <u>Wilks</u>, did not attempt to dispute it.

Like the provision found wanting by the Supreme Court, Section 922(o) is also a "criminal statute that by its terms has nothing to do with 'commerce' or any sort of economic enterprise." <u>Lopez</u>, 115 S.Ct. at 1630-31.  Further, Section 922(o) has no jurisdictional element to ensure that the prohibited firearm

24

possession affects interstate commerce.  Id. at 1631.[16]  Indeed,
Section 922(o) seems to suffer the same infirmities as the broad
reading of the former Section 1202 rejected by the Court in United
States v. Bass, 404 U.S. 336, 92 S.Ct. 515 (1971).  See Lopez, 115
S.Ct. at 1631; Lopez, 2 F.3d at 1347 ("Were Section 1202 read to
punish mere possession without a commerce nexus, the Court argued,
it would intrude upon an area of traditional state authority and
would push Congress' commerce power to its limit, if not beyond.").

As in Lopez, the possession of a machine gun covered by
Section 922(o), without more, is no more an economic activity that
may substantially affect commerce than was the possession of a
firearm in a school zone prohibited by Section 922(q).  115 S.Ct.
at 1634.  Section 922(o) would punish a local resident for the mere
possession of a machine gun acquired after 1986 "with no
requirement that his possession of the firearm have any concrete
tie to interstate commerce."  Id. at 1634.  Indeed, it would appear
that the arguments proffered in defense of Section 922(o) would
unalterably convert the commerce power into a reserved "general
police power" in direct contravention of the Court's dictates.  Id.
at 1632-33; see also Id. at 1638.  As Justice Kennedy's concurrence
in Lopez states:  "Were the Federal Government to take over the
regulation of entire areas of traditional state concern, areas
having nothing to do with the regulation of commercial activities,

_____

[16]    The government's brief relies on the legislative history of other
firearms statutes that was rejected as a guide to interpreting Section 922(q) in
Lopez.  Lopez, 115 S. Ct. at 1632.  Based on the Fifth Circuit's reading of the
legislative history behind firearms regulation and Section 922(o), in accordance
with the discussion above, I would reject the use of legislative history of prior
firearms legislation in this case.

25

the boundaries between the spheres of federal and state authority would blur and political responsibility would become illusory." 115 S. Ct. at 1638.

Regardless of one's view of the wisdom or unwisdom of banning the private, intrastate possession of machine guns, the question before this court is whether Congress had the constitutional authority to do so by virtue of its power to regulate interstate and foreign commerce. Lopez reminds us forcefully that Congress's enumerated power over commerce must have some limits in order to maintain our federal system of government and preserve the states' traditional exercise of the police power. Section 922(o) is a purely criminal law, without any nexus to commercial activity,[17] and its enforcement would intrude the federal police power into every village and remote enclave of this vast and diverse nation. Even after Lopez, Congress need not do much to satisfy the Commerce Clause. Here, however, it did practically nothing. I respectfully dissent from the majority's decision upholding the constitutionality of Section 922(o).

---

[17] This case is obviously different from Wickard v. Filburn, 317 U.S. 111, 63 S.Ct. 82 (1942), in which the farmer's use of his privately grown wheat was found to affect the market and "commerce" in that community.