**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 96-4183

RANDY E. SELF,
Defendant-Appellant.

Appeal from the United States District Court
for the District of South Carolina, at Columbia.
Joseph F. Anderson, Jr., District Judge.
(CR-95-315-3)

Argued: October 28, 1997

Decided: December 31, 1997

Before WILKINS and MICHAEL, Circuit Judges, and
CAMPBELL, Senior Circuit Judge of the United States
Court of Appeals for the First Circuit, sitting by designation.

_____

Affirmed by published opinion. Judge Wilkins wrote the opinion, in
which Judge Michael and Senior Judge Campbell joined.

_____

**COUNSEL**

**ARGUED:** James Mixon Griffin, GRIFFIN & LYDON, L.L.P.,
Columbia, South Carolina, for Appellant. Sean Kittrell, Assistant
United States Attorney, Charleston, South Carolina, for Appellee. **ON
BRIEF:** J. Rene Josey, United States Attorney, Charleston, South
Carolina, for Appellee.

_____

**OPINION**

WILKINS, Circuit Judge:

Randy E. Self appeals the sentence imposed upon him by the district court following his plea of guilty to being a felon in possession of a firearm. See 18 U.S.C.A. § 922(g)(1) (West Supp. 1997). Self principally contends that the district court erred in enhancing his offense level by two levels pursuant to U.S. Sentencing Guidelines Manual § 3C1.1 (1995) based on a finding that Self obstructed justice by attempting to have witnesses murdered. We affirm.

I.

On the evening of October 10, 1994, two elderly sisters, Martha and Cherry Coleman, were attacked by Self and his accomplice, James Shoemake, in the sisters' Columbia, South Carolina home. Self knocked on the door of the Coleman home and attempted to gain entrance by misrepresenting his identity. When this attempt failed, the two men forced their way into the home. Self pistol-whipped one of the sisters with a 9mm semi-automatic pistol, demanded money, and threatened to kill his victims. Self and Shoemake then fled in Self's automobile after taking a small amount of cash. Within minutes, City of Columbia Police Department officers apprehended them, having been alerted by the sisters' neighbors. The officers recovered a 9mm Ruger--which had been stolen by Self and Shoemake in a burglary in the days prior to the robbery--on the floor of the passenger side of the vehicle.

Following their arrest, Self and Shoemake were incarcerated in the Richland County Detention Center. During the first few weeks of their incarceration, Self attempted to solicit another inmate, Charles Parker, who was due to be released soon thereafter, to murder the Coleman sisters in return for $5,000 so that they would not be able to testify. Shoemake and another inmate, Wesley Timberlake, overheard this conversation. Also during his incarceration, Self used the telephone to make numerous obscene and threatening calls to various individuals.

2

Thereafter, Self pled guilty in district court to violating 18 U.S.C.A. § 922(g)(1) in connection with his possession of the 9mm Ruger recovered during his arrest. The presentence report recommended a base offense level of 24 because Self had at least two prior felony convictions for crimes of violence or controlled substance offenses. See U.S.S.G. § 2K2.1(a)(2). This offense level was increased by two levels because the firearm was stolen, see U.S.S.G. § 2K2.1(b)(4), and by four levels because the firearm was possessed in connection with another felony, see U.S.S.G. § 2K2.1(b)(5). The report also recommended that the offense level be increased by two levels because the victims were unusually vulnerable, see U.S.S.G. § 3A1.1(b), and by two levels because the victims were physically restrained, see U.S.S.G. § 3A1.3. Finally, a two-level enhancement was recommended for obstruction of justice based upon Self's attempt to have the Coleman sisters murdered so that they could not testify against him. See U.S.S.G. § 3C1.1. These enhancements resulted in an adjusted offense level of 36 and, when combined with Self's Criminal History Category VI, resulted in a guideline range of 324-405 months imprisonment.

Self made numerous objections to the presentence report. Of particular significance here, Self objected to the § 3C1.1 enhancement for obstruction of justice, denying that he actually solicited the murder of the Coleman sisters and contending that even if he had, such conduct would not provide an adequate basis for the enhancement. During the sentencing hearing, Shoemake and Timberlake testified that they overheard Self solicit Parker to murder the Coleman sisters. In addition, an affidavit submitted by Parker that was consistent with the other testimony was introduced. Based on this evidence, the district court found that Self had attempted to obstruct justice by trying to hire Parker to kill witnesses. Rejecting Self's objections to the presentence report and the Government's request for an upward departure based on the inadequacy of Self's criminal history score, see U.S.S.G. § 4A1.3, the district court sentenced Self to 405 months imprisonment.

II.

Section 3C1.1 provides for a two-level increase in offense level "[i]f the defendant willfully obstructed or impeded, or attempted to

obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense." U.S.S.G. § 3C1.1. Application note three to § 3C1.1 provides a nonexhaustive compendium of the type of conduct that qualifies for this enhancement, which includes "threatening, intimidating, or otherwise unlawfully influencing a ... witness ... or attempting to do so" and committing "conduct prohibited by 18 U.S.C. §§ 1501-16." U.S.S.G. § 3C1.1, comment. (n.3(a), (i)).

Self first contends that the finding of the district court that he attempted to have the Coleman sisters murdered is clearly erroneous, arguing that the testimony supporting the finding was incredible. See United States v. Murray, 65 F.3d 1161, 1165 (4th Cir. 1995) (recognizing that determination by the district court that a defendant engaged in conduct that obstructed justice is a finding of fact subject to clearly erroneous standard of review); United States v. Puckett, 61 F.3d 1092, 1095 (4th Cir. 1995) (same). We disagree. Two witnesses testified during the sentencing hearing that they overheard Self solicit Parker to murder the Coleman sisters, and a consistent affidavit submitted by Parker was presented. The district court considered the possible motives of these witnesses to fabricate their testimony, yet found the witnesses to be credible. On this record, the finding of the district court that Self attempted to have the Coleman sisters murdered is not clearly erroneous. See Puckett, 61 F.3d at 1095 (holding that resolution of factual dispute based on credibility of witnesses is not clearly erroneous); United States v. Uwaeme, 975 F.2d 1016, 1018 (4th Cir. 1992) (explaining that this court "must give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous" (internal quotation marks omitted)); see also 18 U.S.C.A. § 3742(e) (West Supp. 1997).

Self next maintains that assuming he actually attempted to have the Coleman sisters murdered so that they could not testify against him, that conduct cannot form the basis for a § 3C1.1 enhancement. Self recognizes that attempting to have a witness killed easily falls within the type of conduct that constitutes an obstruction of justice.[1] But, he

---

[1] 18 U.S.C.A. § 1512(a) (West Supp. 1997) specifically prohibits "attempts to kill another person, with intent to ... prevent the attendance or testimony of any person in an official proceeding."

4

asserts that his attempt to have the Coleman sisters killed does not satisfy the requirement of the guideline that the conduct occur "during the investigation ... of the instant offense." U.S.S.G. § 3C1.1. Self correctly observes that pursuant to § 3C1.1, because obstructionist conduct must occur "during" the investigation, prosecution, or sentencing, such conduct occurring before any investigation begins is not encompassed within the guideline. See United States v. Gacnik, 50 F.3d 848, 852 (10th Cir. 1995); United States v. Kirkland, 985 F.2d 535, 537-38 (11th Cir. 1993); United States v. Luna, 909 F.2d 119, 120 (5th Cir. 1990) (per curiam); see also United States v. Emery, 991 F.2d 907, 912 n.6 (1st Cir. 1993) (recognizing that "the text of [§ 3C1.1], on its face, seems to require that some investigation be underway"). But see United States v. Barry , 938 F.2d 1327, 1333-35 (D.C. Cir. 1991). Self also contends that the term "instant offense" refers merely to the offense of conviction. And, finally, he maintains that the investigation by federal officers into possible federal firearms charges did not begin until after he solicited the murders. From these premises, Self contends that because the offense of conviction was a § 922(g)(1) violation--i.e., a federal firearms offense--the solicitation of the murder of the Coleman sisters could not have occurred "during the investigation ... of the instant offense" because the investigation into that charge had not yet begun. We reject Self's analysis.

As an initial matter, it is by no means clear that the factual predicate upon which Self's argument is based--that federal officials had not begun an investigation when he attempted to have the Coleman sisters killed--is correct. The district court did not resolve this factual issue, and the record is unclear concerning whether a federal investigation had begun at the time. The Government argues that on October 11, the day after Self was arrested, a state officer assigned to a joint federal-state violent crime task force began an investigation into the incident and that an agent of the United States Bureau of Alcohol, Tobacco, and Firearms worked with the state agent that day. The Government also contends that the federal investigation began no later than October 20 and that because Parker indicated that the solicitation occurred in early to mid-October, it is unclear when the obstructionist conduct actually occurred in relation to the commencement of the investigation. If a resolution of this issue were critical to the outcome of this appeal, we would be required to remand this matter to the district court to make an additional factual finding. We con-

5

clude, however, that a determination of this factual question is irrelevant for the reasons set forth below.

Section 3C1.1 draws no distinction between a federal investigation and a state investigation. It merely requires that the conduct occur during the investigation of "the instant offense." U.S.S.G. § 3C1.1. The failure of the guideline to distinguish between an investigation by federal officials as opposed to state officials undoubtedly is founded in a recognition that state officers are authorized to and frequently do investigate criminal conduct that ultimately is prosecuted under federal law. Indeed, in the initial stages of a criminal investigation, it may be anything but clear whether the conduct being investigated violates state law, federal law, or both. Accordingly, the appropriate focus of inquiry is not whether federal officials had begun involvement with the investigation, but whether the investigation was for "the instant offense."[2] Thus, we turn to address the meaning of that term.

The term "offense" is defined in the guidelines to mean "the offense of conviction and all relevant conduct under § 1B1.3 (Relevant Conduct) unless a different meaning is specified or is otherwise clear from the context." U.S.S.G. § 1B1.1, comment. (n.1(l)). And, § 1B1.3(a)(1) includes as relevant conduct:

> (A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and
>
> (B) in the case of jointly undertaken criminal activity ... all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity,
>
> that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of

_____

[2] This conclusion accords with that of the other courts of appeals that have addressed this issue. See United States v. Smart, 41 F.3d 263, 265-66 (6th Cir. 1994) (per curiam); United States v. Adediran, 26 F.3d 61, 64-65 (8th Cir. 1994); United States v. Emery , 991 F.2d 907, 911-12 (1st Cir. 1993); United States v. Lato, 934 F.2d 1080, 1082-83 (9th Cir. 1991).

6

> attempting to avoid detection or responsibility for that offense.

U.S.S.G. § 1B1.3(a)(1). As a general matter, then, the term "offense" refers to the offense of conviction including relevant conduct within the meaning of § 1B1.3; however, if a defendant obstructs the investigation only of another individual's offense or an offense committed by the defendant that is neither the offense of conviction nor relevant conduct to the offense of conviction, the enhancement would not apply. See United States v. Gacnik, 50 F.3d 848, 852-53 (10th Cir. 1993); United States v. Bagwell, 30 F.3d 1454, 1458-59 (11th Cir. 1994); United States v. Yates, 973 F.2d 1, 4-5 (1st Cir. 1992). But see United States v. Kirk, 70 F.3d 791, 797-98 (5th Cir. 1995) (stating that "[a]lthough [§ 3C1.1] clearly contemplates a relationship between the information concealed and the offense conduct, it does not require that it be related directly to a particular offense to which the defendant pleads guilty" and upholding an obstruction enhancement when the conduct impeded the investigation of offenses with which the defendant was charged but which were neither the offense of conviction nor relevant conduct of that offense).

Self, however, contends that the guideline definition of "offense" and § 1B1.3 leave open the possibility that the definition of the term "offense" may be narrower if so specified in the applicable guideline and that the modifier "instant" in § 3C1.1 operates as such a limitation. Under Self's reading of the guideline, the term "instant offense" means the offense of conviction without relevant conduct. See United States v. Perdomo, 927 F.2d 111, 117-18 (2d Cir. 1991) (holding that the term "instant offense" means offense of conviction without relevant conduct); United States v. Dortch, 923 F.2d 629, 632 (8th Cir. 1991) (stating that "the term `instant offense' refers to the offense of conviction" and reversing an enhancement based on conduct committed during the course of relevant conduct); see also United States v. Woods, 24 F.3d 514, 516-17 (3d Cir. 1994) (explaining that § 3C1.1 "adjustment applies only when the defendant has made efforts to obstruct the investigation, prosecution, or sentencing of the offense of conviction").

An amendment to the guidelines that became effective November 1, 1997 makes clear that Self's reading of the term "instant offense"

7

is mistaken. See United States v. Capers, 61 F.3d 1100, 1109 (4th Cir. 1995) (explaining that an amendment that merely clarifies the operation of an existing guideline, rather than introduces substantive changes, may be applied retroactively). The amendment modified U.S.S.G. § 1B1.1 to illuminate the meaning of the term "instant offense" and provides that "[t]he term `instant' is used in connection with `offense,' `federal offense,' or `offense of conviction,' as the case may be, to distinguish the violation for which the defendant is being sentenced from a prior or subsequent offense, or from an offense before another court." U.S.S.G. § 1B1.1, comment. (n.1(l)) (1997). This clarifying definition makes crystalline that the term "instant" is added to the term "offense" to distinguish the offense of conviction from other offenses that are not before the court; it is not intended to negate the application of relevant conduct principles in determining the scope of the guideline. Thus, the Sentencing Commission has made plain that by adding the modifier"instant" in § 3C1.1, it did not intend to exclude the relevant conduct of § 1B1.3(a)(1) in assessing whether a defendant's obstructionist conduct satisfies that section. Consequently, we hold that the term "instant offense" in § 3C1.1 refers to the offense of conviction including relevant conduct.

Here, it is clear that when Self solicited the murder of the Coleman sisters, there was an ongoing criminal investigation. Obviously, that investigation included the robbery and assault of the Coleman sisters. And, as such, the solicitation of the murders occurred during the investigation of the instant offense within the meaning of § 3C1.1 because it took place during the investigation of the robbery and assault, which are relevant conduct for the offense of conviction, a violation of § 922(g)(1).[3] Furthermore, it is not disputed that the circumstances surrounding Self's possession of the 9mm Ruger were being investigated by state officials when Self solicited the murders; therefore, even though federal officials may not have been involved in the investigation at that time, the offense of conviction nevertheless was being investigated. Accordingly, we conclude that the district

_____

[3] The robbery and assault are part of the relevant conduct of the § 922(g)(1) offense because they were "committed ... by the defendant ... during the commission of the offense of conviction." U.S.S.G. § 1B1.3(a)(1).

8

court did not err in enhancing Self's offense level by two levels for his obstruction of justice by attempting to have the Coleman sisters murdered.

III.

For the foregoing reasons,[4] we affirm the sentence imposed by the district court.

AFFIRMED

_____

[4] We have carefully considered Self's other allegations of error and find them to be without merit.

9