**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                              No. 98-4398

JERRY L. GAINES,
Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of West Virginia, at Clarksburg.
Irene M. Keeley, District Judge.
(CR-97-20)

Submitted: March 11, 1999

Decided: March 22, 1999

Before ERVIN and MICHAEL, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

John R. Angotti, ANGOTTI & STRAFACE, Morgantown, West Vir-
ginia, for Appellant. William D. Wilmoth, United States Attorney,
Robert H. McWilliams, Jr., Assistant United States Attorney, Whee-
ling, West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Jerry L. Gaines pled guilty to one count of distributing crack cocaine, 21 U.S.C. § 841(a) (1994), and was sentenced to a term of 240 months imprisonment. He appeals his sentence, arguing that the district court clearly erred in finding that he was a leader or organizer in the offense, see U.S. Sentencing Guidelines Manual § 3B1.1(a) (1997), that he obstructed justice by threatening a witness, see USSG § 3C1.1, and that he failed to accept responsibility for his criminal conduct, see USSG § 3E1.1. We affirm.

From 1994 until his arrest in March 1997, Gaines made regular trips from Pittsburgh to West Virginia to sell crack. He first sold crack in Fairmont, but later began traveling to Clarksburg. In Fairmont, Gaines paid Eleanor Walker and Helen King Morris for the privilege of selling crack from their houses. Eventually, Gaines began insulating himself by refusing to sell directly to some customers, dealing instead through intermediaries such as Walker, Carrie King, and Raynard Lindsey. After moving his operation to Clarksburg, Gaines made his local contacts through Maureen Garrett. Gaines sold crack through Garrett to Martin Queen, who became an important customer, until he felt he could trust Queen. He then dealt with Queen directly. Similarly, Monica Angle sold crack for Gaines to Tronia (Tony) Shade until Gaines trusted Shade enough to sell to him directly. Several times, Gaines had Shade pick him up at the bus station, and gave him crack in return.

Gaines was arrested after police in Clarksburg received a tip about his drug trafficking and observed Queen, who was a known crack user, leaving his motel room. When Queen was questioned by police, he admitted buying $300 worth of crack from Gaines at the motel and buying $400 worth of crack from Gaines at a mall earlier the same day. Within a few days of Gaines' arrest, Queen received a call on his

2

cell phone from an unknown person who said, "We have your number, we know where you live, you better watch your family." Queen testified that he dialed *69 and learned that the call had been made from a pay phone.

The probation officer recommended a four-level adjustment because Gaines was a leader or organizer of a drug trafficking enterprise that involved five or more participants. See USSG § 3B1.1(a). Gaines filed written objections to the presentence report in which he challenged the probation officer's recommendations, claiming that none of the witnesses who had provided information about his activities were credible. At sentencing, the district court heard extensive testimony from Queen, Shade, Angle, and Morris, as well as Corrie Clayton, one of Gaines' customers, and Clarence Williams, a taxi driver who on occasion drove Gaines from Fairmont to Clarksburg and was paid in crack. The court also reviewed the grand jury testimony of Queen, Morris, Walker, Clayton, and several others. Finally, the district court determined that Gaines qualified for the adjustment. We review the district court's determination for clear error. See United States v. Hyppolite, 65 F.3d 1151, 1159 (4th Cir. 1995).

First, it is clear that the criminal activity involved more than five participants. Second, a defendant may qualify for the adjustment if he leads or organizes "one or more other participants." USSG § 3B1.1, comment. (n.2). Gaines concedes that he exercised some control over Walker and Morris, but maintains that he had nothing more than a buyer-seller relationship with all the other participants. Under the clear language of the guideline commentary, leading or organizing two participants is sufficient to trigger the adjustment. Consequently, we need go no further to find that the district court did not clearly err in making the adjustment.

Next, Gaines contends that the court clearly erred in finding that he obstructed justice by attempting to tamper with a witness. See United States v. Self, 132 F.3d 1039, 1041 (4th Cir. 1997) (standard of review). He argues that Queen's testimony was unreliable and uncorroborated and thus did not permit the court to find by a preponderance of the evidence that he had instigated the threats Queen received. We do not review the district court's assessment of Queen's credibility. See United States v. Saunders, 886 F.2d 56, 60 (4th Cir.

3

1989) (standard of review for adjustment under § 3C1.1). While the evidence that Gaines was behind the threat to Queen was circumstantial, it was compelling. Shortly after he made two large sales to Queen, Gaines' motel room was searched under a warrant and he was arrested. When Queen received the anonymous threatening call a few days later, he assumed it was being made on Gaines' behalf. Although Queen testified that he bought drugs from other people, he received no other threats. We find that the district court did not clearly err in finding that Gaines was responsible for the threat.

Last, Gaines argues that the district court clearly erred in finding that he had not accepted responsibility for the offense merely because he challenged the amount of crack attributable to him. He contends that he justifiably objected "to the 1800 grams the probation officer had originally calculated for the purposes of sentencing," and points out that he "was eventually sentenced based on 422.39 grams" of crack. This statement is inaccurate. The record reveals that, while the government initially suggested that Gaines sold 1800 grams of crack, the probation officer recommended that Gaines was responsible for only 442.39 grams. Gaines contested this amount by impugning the veracity of every witness against him and admitting only that he sold crack. Most important, the commentary to USSG § 3E1.1 provides that an adjustment for acceptance of responsibility is not ordinarily available to a defendant who receives an adjustment for obstruction of justice. See USSG § 3E1.1, comment. (n.4). This is not an extraordinary case where both might apply.

We therefore affirm the sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

4