**UNITED STATES COURT OF APPEALS**

**For the Fifth Circuit**

No. 94-60114

Summary Calendar

UNITED STATES OF AMERICA,

Appellee,

VERSUS

HOMERO ALANIZ - ALANIZ,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas

( November 14, 1994 )

Before WISDOM, KING, and GARWOOD, Circuit Judges.

WISDOM, Circuit Judge.

Today we review the district court's revocation of a period of supervised release and imposition of a mandatory jail term.  The court based its decision on a finding that the petitioner violated a standard condition of supervised release by conspiring to possess marihuana.  Because we hold that the district court was correct in

its assessment of the evidence, including its admissibility, we AFFIRM.

I.

On August 1, 1988, Homero Alaniz-Alaniz (Alaniz) pleaded guilty to possession with intent to distribute approximately 390 grams of cocaine. The district court sentenced Alaniz to 46 months in prison, followed by a four year term of supervised release.

Alaniz's term of supervised release commenced on October 7th, 1991. On July 1, 1993, a United States Probation Officer filed a petition for action on a term of supervised release, alleging that Alaniz violated a condition of his release by conspiring to possess marihuana.[1] The petition alleged that on May 17, 1993, Alaniz was arrested near a farm in Coldwater, Michigan, and that, subsequently, law enforcement officials found approximately 1600

---

[1] The petition further alleged that Alaniz violated standard conditions of his release by leaving the judicial district without the permission of his probation officer; by possessing and distributing marihuana; by being in a place where marihuana was sold; by associating with individuals who were involved in criminal activity and with a person, Rolando Longoria, who had been convicted of a felony; and by failing to notify his probation officer within 72 hours of his arrest.

pounds of marihuana on and around the premises.

Thereafter, on November 22, 1993, the probation office informed the court that the United States attorney for the Western District of Michigan had moved to dismiss the drug charges against Alaniz and that the district court had granted the motion. The motion explained that the government believed that Alaniz was not involved in the conspiracy charged in the indictment, but rather, that he was involved in a conspiracy to possess a smaller amount of marihuana.

At a December 16, 1993, hearing on the petition, Alaniz admitted violating certain conditions of his release; however, the district court ordered an additional hearing with regard to the alleged conspiracy.[2] The probation officer subsequently filed an amended petition with respect to that violation. The petition alleged that on May 16th and 17th, 1993, Alaniz conspired to smuggle 50 pounds of marihuana from Roma, Texas, to Coldwater,

---

[2]Alaniz admitted to leaving the judicial district without the permission of his probation officer, and also to failing to notify his probation officer within 72 hours of his arrest.

Michigan, with the intent to distribute it.

The court found that Alaniz conspired to possess marihuana and sentenced Alaniz to 16 months in prison. This appeal followed.

## II.

This court reviews the factual findings of the district court for "clear error."[3] The district court's application and interpretation of the Sentencing Guidelines are matters of law subject to *de novo* review.[4]

## III.

Alaniz asserts arguments concerning both the quality and the quantity of the evidence offered against him.

### A. Credibility of the Evidence

As to the quality of the evidence, Alaniz contends that the testimony of the government's sole witness in the revocation proceedings was vacillating, contradictory, and wholly unreliable.

---

[3] United States v. Montoya-Ortiz, 7 F.3d 1171, 1179 (5th Cir. 1993). A factual finding is clearly erroneous if it is not plausible in light of the record taken as a whole. *See* Anderson v. City Of Bessemer City, 470 U.S. 564, 573-76 (1985).

[4] Montoya-Ortiz, 7 F.3d at 1179.

4

We need not examine this issue.

The government submitted the affidavit of Rolando G. Longoria to support the charge that Alaniz conspired to possess marihuana.

At the hearing, Longoria testified that he travelled with his father (Longoria Sr.) and Alaniz from Texas to Michigan. The Longorias met Alaniz in Rio Grande, followed him to another home, and met two other people. The Longorias and Alaniz travelled together, and the other couple drove a grey van. Longoria testified that at some point, the vehicles were separated.

Longoria further testified that the police stopped his vehicle in Illinois. While they were stopped, a police dog alerted causing the officers to the possibility of contraband and they searched the vehicle. Longoria testified that both his father and Alaniz got "kind of nervous", and that when he asked his father what was wrong, his father replied that "they had 50 pounds in the van." In response to questions from the prosecutor, Longoria clarified that "50 pounds" referred to marihuana and that "they" referred to his father and Alaniz. The court then asked whether Longoria Sr. (the

5

witness's father) had stated specifically that "Homero [Alaniz] and I have 50 pounds." The following exchange took place between the court and Longoria:

> THE COURT: He mentioned Homero Alaniz's name?
>
> THE WITNESS: Yes, he did.
>
> THE COURT: And how was -- why [sic] was it that he said exactly?
>
> THE WITNESS: He goes, have you -- he asked me if I had seen the gray van and I asked why. And he goes, well, because we have 50 pounds in the van.
>
> THE COURT: But, the question remains, did he mention Homero Alaniz--
>
> THE WITNESS: Yes, he did.
>
> THE COURT: --or he said we and you assumed--
>
> THE WITNESS: No, no, he didn't say we, he said me and Homero have 50 pounds in the van.

Longoria testified that after the search of the vehicle, they were released and continued to Coldwater. Upon their arrival, Jesse Villasenor informed Alaniz that his people in the gray van had been calling. Villasenor and Alaniz then left the house and the raid occurred thirty minutes later. Longoria testified that his father had been convicted on two prior occasions for "importing/exporting marijuana," and that his father currently was

6

incarcerated in Oklahoma.  On cross examination, Longoria testified that he did not hear his father and Alaniz discuss marihuana at all.  The only marihuana he saw was a "joint" that he saw his father smoke.  He testified that he did not see any marihuana in the van, and that the police never picked up either the van or the alleged "50 pounds".

Based on this testimony, the court found that Alaniz had violated standard condition number one of his supervised release by knowingly and intentionally conspiring with Longoria Sr. to possess marihuana with the intent to distribute it.

It is not this Court's function to pass on a district court's determination regarding the credibility of the witness.[5]  We may find testimony to be "incredible as a matter of law," if the witness testifies to facts that he "physically could not have observed or events that could not have occurred under the laws of nature."[6]  Short of that, we exercise great deference to a district

---

[5]  See U.S. v. Gadison, 8 F.3d 186, 189-90 (5th Cir. 1993).

[6]  Id. at 190.

7

court's credibility findings. Longoria was present on the trip to Michigan, so it is entirely possible that he had the conversation to which he testifies. Further, such a conversation is entirely possible under the laws of nature. Hence, we defer to the judgment of the district court that Longoria's testimony was credible.

### B. Admissibility of Hearsay Testimony

Alaniz attacks the quality of the evidence from another angle as well. Alaniz asserts that because Longoria's testimony lacked credibility, such hearsay testimony should not have been admitted because it was not sufficiently reliable. "[C]ourts considering the admissibility of hearsay in revocation proceedings have adopted an approach which balances the [releasee's] interest in confronting a particular witness against the government's good cause for denying it, particularly focusing on the indicia of reliability of a given hearsay statement."[7] The district judge did not apply this balancing test, however, because Alaniz failed to object to this

---

[7] United States v. Kindred, 918 F.2d 485, 486 (5th Cir. 1990) (internal quotations omitted).

testimony on hearsay grounds.[8]

Where a defendant in a criminal case has forfeited an error by failing to object, this court may remedy the error only in the most exceptional cases.[9] The Supreme Court has instructed that in such an exceptional case, the defendant has the burden to show that there is clear or obvious error and that it affects substantial rights.[10] Further, even when the appellant has carried that burden, "Rule 52(b) is permissive, not mandatory. If the forfeited error is 'plain' and 'affects substantial rights', the Court of Appeals has authority to order correction, but is not required to do so."[11] As the Supreme Court stated in <u>Olano</u>,[12] it is the standard articulated in <u>United States v. Atkinson</u> that should guide the

---

[8] Although the district court did not explicitly engage in this balancing test, it did find the testimony of Longoria to be sufficiently 'credible' to support the government's charge. Implicit in that finding is that the court credits the testimony as reliable.

[9] <u>United States v. Rodriquez</u>, 15 F.3d 408, 414 (5th Cir. 1994).

[10] <u>United States v. Olano</u>, ___ U.S. ___, 123 L. Ed. 2d 508 (1993).

[11] <u>Id</u>. at __ __, 123 L. Ed. 2d at 520.

[12] <u>Id</u>. at ___ ___, 123 L. Ed. 2d at 521.

application of Rule 52(b). To wit, the Court of Appeals should correct a plain error that affects substantial rights only if the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."[13] Thus, this Court's discretion to correct an error pursuant to Rule 52(b) is narrow.[14]

Guided by the Atkinson standard, we decline to review Alaniz's challenge to the admissibility of Longoria's testimony on hearsay grounds.[15] Even assuming "error" that is "plain", Alaniz has failed to show that the district court violated his "substantial rights" by relying on the testimony.

### C. Sufficiency of the Evidence

As to the quantity of the evidence, Alaniz maintains that Longoria's testimony (being the only testimony) was insufficient to support the district court's finding that Alaniz conspired with

---

[13] United States v. Atkinson, 297 U.S. 157, 160 (1936).

[14] Rodriquez, 15 F.3d at 416-17.

[15] See also United States v. Vontsteen, 950 F.2d 1086, 1090 (5th Cir.) (en banc), cert. denied, 120 L. Ed. 2d 908 (1992) (quoting Wayne R. LaFave and Jerold H. Israel, 3 Criminal Procedure § 26.5 at 251-52 (West 1984) (footnote omitted)) (discussing "many rationales for the raise-or-waive rule").

10

Longoria Sr. to possess 50 pounds of marihuana with the intent to distribute it.

In considering Alaniz's challenge to the sufficiency of the evidence, this Court "must view the evidence and all reasonable inferences that may be drawn from the evidence in a light most favorable to the government."[16]  In fulfilling his task as fact-finder, the judge is "free to choose among reasonable constructions of the evidence".[17]  The evidence is sufficient if a reasonable trier of fact could reach the conclusion being challenged.[18]

At a revocation proceeding, the government has the burden of proving, by a preponderance of the evidence, that the releasee committed the charged violation.[19]  The instant violation, conspiracy to possess with the intent to distribute marihuana, involves three elements: (1) an agreement to possess with intent to

---

[16] United States v. Prieto-Tejas, 779 F.2d 1098, 1101 (5th Cir.), reh'g denied, 783 F.2d 1260 (1986).

[17] United States v. Bell, 678 F.2d 547, 549 (5th Cir. 1982) (en banc), aff'd., 462 U.S. 356 (1983).

[18] Id.

[19] United States v. Montez, 952 F.2d 854, 859 (5th Cir. 1992).

distribute marihuana; (2) the defendant's knowledge of the agreement; and (3) the defendant's voluntary participation.[20] A conviction for "drug conspiracy does not require proof of possession or any other overt act."[21]

A cursory canvas of the facts makes it apparent that the district court was justified in its conclusion that the government carried its burden. Accordingly, we again defer to the judgement of the district court.

## IV.

Since we agree with the district court and its determinations regarding the evidence presented at the revocation hearing, we AFFIRM.

---

[20] United States v. Martinez, 975 F.2d 159, 160-61 (5th Cir. 1992), cert. denied, 113 S.Ct. 1346 (1993).

[21] United States v. Lee, 622 F.2d 787, 790 (5th Cir.), cert. denied, 451 U.S. 913 (1981).