# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

―――――――

m 99-30522
Summary Calendar

―――――――


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

MARIO CAWTHORNE,

Defendant-Appellant.


―――――――――――――

Appeal from the United States District Court
for the Western District of Louisiana
(95-CR-50046-ALL)

―――――――――――――

July 5, 2000


Before SMITH, BARKSDALE, and
PARKER, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

Mario Cawthorne appeals the revocation of his supervised release pursuant to 18 U.S.C. § 3583(e). We vacate the sentence and remand.

### I.
Cawthorne pleaded guilty to unlawful possession of a machine gun in violation of 18 U.S.C. § 922(o)(1), and was sentenced to imprisonment followed by supervised release. The supervised release included the condition that he not possess a firearm. A few months into the period of release, the district court, at the request of the probation office, issued an order to show cause why Cawthorne's supervised release should not be revoked.

The probation office alleged that Cawthorne had violated several conditions of his supervised release by failing to report to a probation officer, by being unemployed, and by failing to report a change in his residence. Following a preliminary probable cause hearing, the probation office filed a supplemental-violation report alleging that Cawthorne had violated the conditions of his supervised release by possessing a firearm.

―――――――

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

At that hearing, Cawthorne admitted failure to report and unemployment but denied the change of residence and possession of a firearm. Probation Officer Steven Cox testified regarding the firearm allegation. When Cox reviewed Cawthorne's file in preparation for the preliminary hearing, he noticed a "partial offense report" from the police department ("the Report").

According to Cox, the Report indicates[1] that when Cawthorne was arrested at his mother's home on a state warrant for attempted homicide, the officers found a semiautomatic handgun in plain view on a bed. According to Cox's testimony, the Report states that (1) Cawthorne's mother both consented to the search and told police that the room in which the gun was found belonged to Cawthorne; (2) the bedroom contained mail addressed to Cawthorne and numerous photographs of him and other family members; and (3) Cawthorne's mother stated that the gun belonged to Cawthorne.

Cawthorne did not object to Cox's testimony regarding the contents of the Report. When the government attempted to introduce the Report into evidence,[2] however, Cawthorne objected on the ground that it was not a self-authenticating document, that the persons who had prepared it were not present, and that the state charges it concerned had been dismissed.[3] The court did not rule on the objection but instead stated, "Well, I don't feel I need it," to which the government replied "Very well, Your Honor."

On cross-examination, Cox testified that Cawthorne's mother, Lola Cawthorne, had informed Cox that she believed the police officers planted the gun, because she had never seen it before they "found" it. She also informed Cox that the room in which the gun was found was a "junk room."

Ms. Cawthorne also testified at the hearing, stating that she had not given police permission to search and that the gun was found in a "junk room," not in Cawthorne's bedroom. She admitted that some of Cawthorne's belongings and family photographs were stored in the "junk room" but testified that there was another bedroom in which Cawthorne lived. She testified that neither she nor her mother had told the police that the "junk room" was Cawthorne's bedroom, and she denied telling the police that the gun belonged to Cawthorne.

At the close of the evidence, the government suggested a continuance to enable the court to hear the testimony of the officers who made the Report:

> Government: If Your Honor wishes I'd ask for a continuance to bring the police officers who made the SS
>
> The Court: No.
>
> Government: If required, if needed.
>
> The Court: No, I find that the defendant, Mr. Cawthorne, violated the terms of his probation by not reporting and failing to tell the probation office where he was, where he could be reached, all class C. And more probably than not possession of a MAC 11 handgun. Therefore, your client has committed both grade A and grade C violations, violations establishing an imprisonment range of 12 to 18 months, so I'm going to order the three-year term of supervised release imposed back in '95 set aside and order Mr. Cawthorne committed to the custody of the Bureau of Prisons for a term of 18 months.

---

[1] Because, as noted below, the Report was not admitted into evidence, all information regarding its content comes from Cox's testimony.

[2] It is not evident whether the government had obtained a complete copy of the Report or was trying to introduce only the portion relied upon by Cox.

[3] Cox testified that the underlying homicide charge and a charge of being a felon in possession were dismissed.

2

Cawthorne objected to the finding of a Grade A violation.[4]

## II.

A court may revoke supervised release if it finds, by a preponderance of the evidence, that the releasee violated a condition of that release. *See* 18 U.S.C. § 3583(e)(3); *United States v. Alaniz-Alaniz*, 38 F.3d 788, 792 (5th Cir. 1994). We review factual findings for clear error, and in a challenge to the sufficiency of the evidence we view the evidence and all reasonable inferences therefrom in a light most favorable to the government. *See id.*, at 790, 792. The evidence is sufficient if a reasonable trier of fact could reach the conclusion being challenged. *See id*. at 792.

The only evidence of the Grade A firearm violation, or lack thereof, consists of the testimony of Cox and Ms. Cawthorne. We first note that Cox's testimony of what the "partial police report" contained is hearsay, but because revocation proceedings are not criminal prosecutions and are not formal trials, the rules of evidence are not applied. *See United States v. Grandlund*, 71 F.3d 507, 509 (5th Cir. 1995), *clarified by* 77 F.3d 811 (5th Cir. 1996); FED. R. EVID. 1101(d)(3); FED. R. CRIM. P. 32.1(a)(2) (advisory committee notes).[5] We also recognize that the district court necessarily made a credibility determination regarding Ms. Cawthorne, and "[i]t is not this [c]ourt's function to pass on a district court's determination regarding the credibility of the witness." *Alaniz*, 38 F.3d at

791.[6]

All state charges resulting from the police report were dismissed, for reasons we do not know. While hearsay is not prohibited in revocation proceedings, we are not unmindful of the reasons that we place restrictions on the use of hearsay in criminal trials. Without some corroboration, it is not reasonable to find a third person's testimony regarding the content of a portion of a police report that never led to any trial or conviction more believable than the testimony of an in-court witness, where that witness's testimony is internally consistent and conceivably correct (e.g., does not violate any laws of nature).

We do not hold that a third party's recollection of the contents of a police report alone may never satisfy a preponderance burdenSSthat case is not before us. Rather, we conclude that where a live witness, based on personal knowledge, consistently and directly contradicted Cox's testimony; Cox's testimony was based solely on his reading a portion of a police report; all charges based on that report were dismissed; and neither Cox's recollection of, nor the content of, the report was corroborated in any manner or to any degree, no trier of fact reasonably could reach the conclusion that the government had satisfied its burden of proof by a preponderance of the evidence.[7] Thus, the evidence is insufficient to establish that Cawthorne more likely than not possessed a firearm.[8]

---

[4] Upon a finding that Cawthorne possessed a firearm, revocation of his supervised release was mandatory under 18 U.S.C. § 3583(g) and U.S.S.G. § 7B1.3(a)(1), p.s. If the court had found only Grade C violations, it would have had discretion to revoke, extend, or modify the conditions of the supervised release. *See* 18 U.S.C. § 3583(e); U.S.S.G. § 7B1.3(a)(2), p.s.

[5] The releasee's due process rights can render some hearsay inadmissible, but Cawthorne did not raise that issue in the district court or on appeal. *See Grandlund*, 71 F.3d at 509-10; *Alaniz*, 38 F.3d at 791-92.

[6] It would be illogical, however, to presume that the credibility of one who does testify is less than that of one who does not even appear before the court.

[7] Neither of the two cases cited by the government for the proposition that police reports can be sufficiently reliable for sentencing purposes involved similar circumstances. *See United States v. Tucker*, 20 F.3d 242, 244-45 (7th Cir. 1994); *United States v. Silverman*, 976 F.2d 1502, 1514 (6th Cir. 1992) (en banc).

[8] We recognize that possession may be constructive, but the requisite elements of (continued...)

VACATED and REMANDED.

---

```
(...continued)
```
constructive possession are contained only in Cox's double hearsay testimony. *See United States v. Mergerson*, 4 F.3d 337, 348-49 (5th Cir. 1993).