# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 20, 2010

No. 09-60750 c/w
No. 09-60613
Summary Calendar

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

ALLAN K. HEARNE,

Defendant-Appellant

Appeals from the United States District Court
for the Southern District of Mississippi
USDC No. 3:08-CR-164-1

Before REAVLEY, DENNIS, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Following a jury trial, Allan K. Hearne was convicted of one count of conspiracy to defraud Medicare by obtaining the payment of false claims; four counts of health care fraud; one count of falsifying documents with the intent of impeding or obstructing an investigation by the Federal Bureau of Investigation; and one count of making a fraudulent statement to the Social Security Administration.  He was sentenced to 73 months of imprisonment and a three-

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

year term of supervised release. We are now presented with Hearne's appeal from his convictions and sentence.

Hearne argues that the district court erred by denying his motion for a new trial. He asserts that the Government violated the Jencks Act by failing to timely produce a transcript of grand jury testimony given by a Government witness in support of the superseding indictment in this case. Hearne contends that the Government's belated production of the transcript prejudiced his defense, which he contends was premised upon the allegations in the original indictment; Hearne maintains that he discovered only after reviewing the transcript that the superseding indictment alleged new claims. He argues that he consequently was denied the opportunity to prepare an adequate defense.

The Jencks Act requires the Government to disclose prior recorded witness statements in its possession relating to the subject matter of that witness's testimony. 18 U.S.C. § 3500. The failure to produce Jencks Act material is subject to harmless error analysis. *United States v. Montgomery*, 210 F.3d 446, 451 (5th Cir. 2000). "We strictly apply harmless error analysis and determine whether the error itself had a substantial influence on the judgment in addition to determining whether there was sufficient evidence to support the conviction." *Id.* We must decide "whether there is or is not a reasonable possibility that the absence of [the] grand jury testimony affected the outcome of the case or handicapped [the defendant] or his counsel in their presentation or defense." *United States v. Keller*, 14 F.3d 1051, 1054 (5th Cir. 1994) (alterations in original) (quoting *United States v. Rivero*, 532 F.2d 450, 461 (5th Cir. 1976)) (internal quotation marks omitted).

Here, while the Government admittedly did not turn over the grand jury transcript, the error was harmless. The record shows that there was no significant difference between the witness's grand jury testimony and his trial testimony. *See Montgomery*, 210 F.3d at 451-52. Moreover, the record shows that Hearne had available to him the information that he needed to develop a

defense to the charged offenses and to cross-examine the witness with respect to those charges.  Thus, Hearne has not shown that the district court erred by denying his motion for a new trial.

Hearne also argues that the district court erred in calculating the intended loss for his offenses for purposes of sentencing.  He contends that the district court improperly determined that the intended loss was the total amount of the claims that he falsely filed with Medicare rather than the amount that he was actually reimbursed for those claims.  Hearne maintains that there was no evidence that he intended to recover from Medicare the total amount that he billed.  He argues that he is a highly educated health care provider with an understanding of Medicare reimbursement procedures, and that he therefore knew that Medicare would reimburse him only a fixed rate.

Under U.S.S.G. § 2B1.1, the offense level for defendants convicted of fraud is increased commensurate with the amount of loss involved in the fraud.  The commentary to § 2B1.1 indicates that "loss" for purposes of the guideline is "the greater of the actual loss or intended loss."  U.S.S.G. § 2B1.1 cmt. n.3(A). "Actual loss" is the reasonably foreseeable pecuniary harm resulting from the offense, and "intended loss" is the pecuniary harm that was intended to result from the offense.  *Id*. § 2B1.1 cmt. n.3(A)(i), (ii).  "Intended loss" includes "intended pecuniary harm that would have been impossible or unlikely to occur (e.g., as in a government sting operation, or an insurance fraud in which the claim exceeded the insured value)."  *Id*. § 2B1.1 cmt. n.3(A)(ii).

The district court's calculation of the amount of intended loss is reviewed for clear error; its method of determining the amount of intended loss is reviewed de novo.  *See United States v. Harris*, 597 F.3d 242, 251 n.9 (5th Cir. 2010).  "[O]ur case law requires the government prove by a preponderance of the evidence that the defendant had the subjective intent to cause the loss that is used to calculate his offense level."  *United States v. Conroy*, 567 F.3d 174, 179 (5th Cir. 2009) (alteration in original) (quoting *United States v. Sanders*, 343

3

F.3d 511, 527 (5th Cir. 2003) (internal quotation marks omitted). The amount fraudulently billed to Medicare is "prima facie evidence of the amount of loss [the defendant] intended to cause," but "the parties may introduce additional evidence to suggest that the amount billed either exaggerates or understates the billing party's intent." *United States v. Miller*, 316 F.3d 495, 504 (4th Cir. 2003).

There was evidence that Hearne lacked knowledge of the billing procedures for Medicare and therefore did not understand the amounts that Medicare likely would pay. Hearne's trial testimony indicated that he left responsibility for Medicare claims to his staff, and his testimony at sentencing showed that he generally was uninformed about how Medicare reimbursements work. While Hearne at sentencing showed some knowledge of the difference between the amounts he would bill to Medicare and the amounts that Medicare would pay, the district court found this self-serving testimony not to be credible. "[W]e exercise great deference to a district court's credibility findings." *United States v. Alaniz-Alaniz*, 38 F.3d 788, 791 (5th Cir. 1994). The district court concluded, "[I]t appears that he indiscriminately submitted false and fictitious bills in an effort to maximize reimbursements. It does not appear that he was focused on the mechanics of the program and, instead, was focused on [the] number of claims. Thus, even if he has some notion about caps and understood that full reimbursement was unlikely or impossible, the defendant still submitted claims with the intent that they would be paid." This factual finding was supported by the evidence. Therefore, the district court did not clearly err in determining that the amount of intended loss was the amount Hearne falsely billed to Medicare rather than the amount he was reimbursed.

Accordingly, the judgment of the district court is AFFIRMED.