# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 10, 2023

Lyle W. Cayce
Clerk

No. 21-20645

United States of America,

*Plaintiff—Appellee*,

*versus*

Heriberto Latigo,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:15-CR-295-1

Before Wiener, Stewart, and Engelhardt, *Circuit Judges*.

Per Curiam:*

After determining that Heriberto Latigo violated his supervised release condition prohibiting contact with his stalking victim, the district court revoked his term of supervised release. It then sentenced him to time served and two additional years of supervised release. Latigo now appeals, arguing that his conduct did not constitute a violation of the condition. Because we have determined that the district court did not abuse its

---

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

discretion in revoking Latigo's supervised release term and imposing an additional term of supervised release, we AFFIRM.

## I. Factual & Procedural Background

In 2017, a jury found Latigo guilty of stalking in violation of 18 U.S.C. § 2261A(2)(B). At trial, the Government presented evidence that Latigo used digital media such as texts, emails, and social media accounts over a period of months in 2014 to harass, blackmail, and impersonate his victim, C.D., a former co-worker with whom Latigo was romantically involved. The district court sentenced Latigo to 60 months of imprisonment and three years of supervised release. His supervised release term included a condition prohibiting him from "communicat[ing], or otherwise interact[ing], with C.D. either directly or through someone else, without first obtaining the permission of the probation officer." This court affirmed the district court's judgment on appeal, and Latigo began serving his three-year term of supervised release in August 2019. *See United States v. Latigo*, 781 F. App'x 362, 363 (5th Cir. 2019).

In July 2021, the probation officer filed a petition for revocation alleging that Latigo violated a condition of his supervised release by communicating with C.D. In support, the probation officer stated that, on or about October 25, 2020, a public website titled "heribertolatigo.com" was created. The preface page of the website stated, "[t]his site along with [] 'The Belly Button of the Universe' website work in tandem with providing public details of a few very corrupt individuals." The website contained a hyperlink to the second website, "The Belly Button of the Universe" ("BBU"), which listed Latigo as its creator. Along the top of the BBU webpage were hyperlinks that read: In the Press/Criminal Trial/Characters/More. Clicking on the "Characters" link routed the viewer to a page containing a list of individuals, including C.D. The

No. 21-20645

"Characters" page contained extensive personal information about C.D., numerous sexually explicit images of C.D., and described in detail Latigo's intimate thoughts about C.D. Based on the foregoing and the fact that Latigo did not receive approval from his probation officer for such activity, the probation officer recommended that the district court revoke Latigo's term of supervised release.

At a hearing on the matter, the Government put forth the testimony of Latigo's probation officer to establish that Latigo had a firm understanding of all the conditions of his supervised release. The Government also proffered the testimony of Special Agent Christopher Petrowski, the lead agent involved in the stalking case against Latigo. Petrowski explained that G.A. (another of Latigo's victims), M.L. (Latigo's ex-wife), and C.D. contacted the FBI after discovering the BBU website and expressed concerns over the disturbing information and sexually graphic images it displayed. According to the record, C.D. became aware of the website when her ex-husband, who lives in China, discovered it and informed her of its existence. Petrowski also testified that the execution of a search warrant on Latigo's residence revealed a manuscript that attributed its authorship to Latigo. The Government introduced into evidence quoted material from the manuscript, which was also found on the BBU website.

Following the hearing, the district court ruled that Latigo had violated a condition of supervised release but deferred until later its decision on whether to revoke or modify his supervised release. The district court then determined, based on a review of the testimony and documentary evidence, that Latigo or someone acting on his behalf and with his knowledge and consent, (1) created the BBU website, (2) contacted C.D. to gather information for Latigo's story on the site, and (3) caused the publication or posting of salacious pictures of C.D. without her knowledge or permission, some of which were part of the sealed court records. The court further noted

that neither Latigo nor any person acting on his behalf sought or secured the permission of the court to publish any materials on the website that the court had placed under seal. Finally, the court found that Latigo's conduct was "not simply a single act, but constitute[d] an ongoing, persistent and sustained violation of the term or condition of supervised release" prohibiting contact with C.D. The district court then ordered Latigo to (1) remove any and all references to C.D. from the BBU website, (2) execute a document agreeing that he would not post or report any materials referencing C.D. on his or anyone else's blog, website, social media, or in the public or private domain, and (3) identify and return all sealed materials to the court.

The district court then held another hearing, during which it determined that Latigo had not complied with its order. Latigo argued at the hearing that neither he nor anyone from the BBU website contacted C.D. directly or indirectly. He then indicated that because he proceeded pro se during his stalking trial, the BBU website should have clarified that he, the website creator, interviewed or cross-examined each individual mentioned on the site. Latigo requested a sentence of time served while the prosecutor argued for continued incarceration. The district court sentenced Latigo to time served and two years of supervised release, with the same conditions as his original term of supervised release. This appeal ensued.

## II. Discussion

"A district court may revoke a defendant's supervised release if it finds by a preponderance of the evidence that a condition of release has been violated." *United States v. McCormick*, 54 F.3d 214, 219 (5th Cir. 1995). We review a district court's revocation for abuse of discretion, *id.*, and its findings of fact for clear error. *United States v. Alaniz-Alaniz*, 38 F.3d 788, 790 (5th Cir. 1994). We defer to the district court's credibility findings unless the testimony was "incredible as a matter of law" because the witness

testified to facts that he or she "physically could not have observed or events that could not have occurred under the laws of nature." *Id.* at 791 (internal quotation marks and citation omitted). When reviewing a challenge to the sufficiency of the evidence, we view the evidence and all reasonable inferences therefrom in the light most favorable to the Government. *Id.* at 792. The "evidence is sufficient if a reasonable trier of fact could reach the conclusion being challenged." *Id.*

On appeal, Latigo argues that the district court abused its discretion in revoking his supervised release. More specifically, he argues that the district court erred (1) in determining that his creation of the BBU website constituted a "communication" or "interaction" with C.D.; (2) in concluding that he, or someone operating on his behalf, contacted C.D. regarding the content of the website; and (3) in focusing on his use of "sealed" documents and his use of C.D.'s photos without her permission because his conditions of supervised release did not prohibit such activity. We are unpersuaded.[1]

According to the record, Latigo's supervised release condition specified that "[he] must not communicate, or otherwise interact, with C.D. either directly or through someone else, without first obtaining the permission of the probation officer." In other words, this condition prohibits any form of unauthorized direct or indirect contact with C.D. Yet Latigo did just that when he created these publicly accessible websites where he posted

---

[1] As a preliminary matter, Latigo argues that his appeal is not moot because the district court imposed an additional two-year term of supervised release that, if vacated, would result in fewer challenges if and when he is sentenced in the future for his additional stalking crimes. We agree that his appeal is not moot and, for this reason, adjudicate his claims on the merits herein. *See United States v. Heredia-Holguin*, 823 F.3d 337, 340 (5th Cir. 2016) (en banc) ("A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.").

sexually graphic images and detailed disturbing information about C.D. The record further supports the district court's conclusion that Latigo's creation of these websites, which were accessible worldwide, constituted an indirect communication with C.D. Not only could C.D. easily access the websites with the disturbing images and details about her, but anyone with internet access could view the websites, as evinced by her ex-husband's discovery of the sites while he resided in China. We agree that there is no functional difference between Latigo directly contacting C.D. to stalk and harass her versus creating a website that he made easily accessible to her and the public at large through the internet. *See United States v. Ellis*, 720 F.3d 220, 226 (5th Cir. 2013) (citations omitted) ("This circuit has repeatedly stated conditions of supervised release . . . should be read in a commonsense way."). As the Government astutely observed at Latigo's revocation hearing:

> The defendant repeatedly tries to file documents, to hide behind legal filings to construe things in a manner so as not to have to be held responsible for his continued harassment of individuals who have done nothing to him, who have tried to move on with their lives, who have, because of him, had to curtail their social media, their [i]nternet presence, their lives because he remains a constant threat to them, to their emotional and mental health, to their sense of security, to their sense of freedom. His presence is a constant cloud looming over them, somebody always lurking behind them. He causes them to have to constantly look over their shoulder, and every time they think they are finally free of this, he comes back with something else. Even his absolute disregard for this [c]ourt's orders during the pendency of this revocation. Your Honor told him to have no more postings of Ms. Doe, to not publicly do anything. And all he did was run into state court and take . . . 84 pages of the contents of his website and file it in Harris

No. 21-20645

> County where it was publicly available. And then whine to this [c]ourt about how hard it was for him to get that sealed and how this is everybody else's problem but his. And I don't know how the [c]ourt can impress upon him that he has a problem.[2]

The record in this case adequately supports the district court's determination, by a preponderance of the evidence, that Latigo violated his supervised release condition prohibiting him from communicating with C.D., either directly or through someone else. *See McCormick*, 54 F.3d at 219. Accordingly, viewing the evidence in the light most favorable to the Government, *Alaniz-Alaniz*, 38 F.3d at 792, we hold that the district court did not abuse its discretion in revoking Latigo's supervised release term and in imposing a new two-year term of supervised release. *See McCormick*, 54 F.3d at 219.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's order revoking Latigo's supervised release term and imposing an additional two-year term of supervised release.

---

[2] This observation is further bolstered by the fact that Latigo is being currently held in federal custody after being indicted on yet another stalking charge, unrelated to this appeal. *See* docket sheet TXSD 4:21-cr-575.