FILED
United States Court of Appeals
Tenth Circuit

January 3, 2024

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

PETER CALVERT-CATA,

Defendant - Appellant.

No. 23-2000
(Case No. 1:16-CR-04566-JB-1)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **BACHARACH**, **BALDOCK**, and **MURPHY**, Circuit Judges.

_____

This appeal grew out of a petition to revoke Mr. Calvert-Cata's

supervised release for strangling his girlfriend. To consider the petition,

the district court conducted a hearing. At the hearing, the girlfriend didn't

testify; but the government presented evidence from others about what the

girlfriend had said. The district court revoked supervised release by

disregarding these out-of-court statements and relying on other evidence.

---

[*]     This order and judgment does not constitute binding precedent except
under the doctrines of law of the case, res judicata, and collateral estoppel.
But the order and judgment may be cited for its persuasive value if
otherwise appropriate. Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

Mr. Calvert-Cata argues that without the out-of-court statements, the government couldn't prove that he had intentionally tried to harm his girlfriend. We disagree.

**1.    In urging revocation, the government used out-of-court statements from Mr. Calvert-Cata's girlfriend.**

The government petitioned the district court to revoke supervised release based on (1) a failure to report to the probation department and (2) the commission of a crime involving aggravated battery against a household member.[1]

The government's allegation of aggravated battery grew out of a call to 911 and an oral report to a police officer. In the 911 call and the oral report to the police officer, the girlfriend said that Mr. Calvert-Cata had

- choked and punched her and

- threatened to rape and kill her.

In seeking revocation for aggravated battery, the government relied on testimony from Mr. Calvert-Cata's probation officer and the police officer.

Together, the probation officer and police officer testified about

---

[1]    Mr. Calvert-Cata admitted that he had failed to report to the probation department. The district court accepted this admission and based the revocation partly on the failure to report to probation. But this violation carried a guideline range of only 3 to 9 months. For the violation involving commission of a crime (aggravated battery against a household member), the guideline range was 24 to 30 months.

2

- the girlfriend's out-of-court statements,

- the girlfriend's injuries,

- the girlfriend's demeanor as she sprinted to the police, and

- the proximity of Mr. Calvert-Cata's car.[2]

This testimony involved not only what the girlfriend had said but also information from other sources. For example, the probation officer and police officer testified about photographs and observations of the girlfriend's injuries, the presence of Mr. Calvert-Cata's car nearby, and the girlfriend's visible fear as she ran.

The district court credited the testimony and found aggravated battery against a household member.[3] Mr. Calvert-Cata contests the finding of aggravated battery against a household member (but not the failure to report).

**2.    Under the abuse-of-discretion standard, we consider whether the district court clearly erred in its factual findings.**

In reviewing the revocation of supervised release, we apply the abuse-of-discretion standard. *United States v. Jones*, 818 F.3d 1091, 1097

---

[2]    In testifying, the probation officer relied on the police officer's report.

[3]    New Mexico statutes distinguish between battery and aggravated battery. *See State v. Pettigrew*, 860 P.2d 777, 780 (N.M. 1993) (discussing the difference between battery and aggravated battery as reflected in N.M. Stats. Ann. §§ 30-3-4, 30-3-5(C)). The court said that it was finding a *battery*, but relied on N.M. Stats. Ann. § 30-3-16(C). This statute addresses *aggravated battery*, not *battery*.

(10th Cir. 2016). A district court abuses its discretion when it bases the revocation on a clearly erroneous finding of fact. *United States v. Muñoz*, 812 F.3d 809, 817 (10th Cir. 2016). This standard is "significantly deferential." *Concrete Pipe & Prod. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 623 (1993). Under this deferential standard, we reverse the finding of aggravated battery only if

- the finding lacks any evidentiary support or

- we have a definite, firm conviction that the district court erred.

*United States v. Hernandez*, 847 F.3d 1257, 1263 (10th Cir. 2017). When the district court's finding is plausible under the record as a whole, we can't reverse even if we would have reached a different finding. *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573–74 (1985).

At oral argument, Mr. Calvert-Cata conceded that when reviewing a revocation of supervised release, we consider the evidence in the light most favorable to the government. Given Mr. Calvert-Cata's concession, we will view the evidence in the light most favorable to the government when considering whether the district court had clearly erred.[4]

---

[4]    When reviewing the sufficiency of the evidence on guilt, we generally view the testimony and exhibits favorably to the government. *E.g.*, *United States v. Leaverton*, 835 F.2d 254, 255 (10th Cir. 1987). But we haven't considered whether to apply this approach when reviewing revocation of supervised release. In this setting, however, other circuits have applied their traditional approach of viewing the evidence favorably to the government. *United States v. King*, 608 F.3d 1122, 1129 (9th Cir.

### 3. The district court needed to assess the likelihood that Mr. Calvert-Cata had committed aggravated battery.

We assess that evidence based on the government's underlying burden in district court. There the government had to show aggravated battery based on a preponderance of the evidence. *See* 18 U.S.C. § 3583(e)(3). To assess the government's showing, the district court needed to apply New Mexico law on the crime of aggravated battery against a household member. Under this law, the government had to prove

- an unlawful touching of Mr. Calvert-Cata's girlfriend,

- an intent to injure the girlfriend,

- a romantic relationship with the girlfriend, and

- strangulation of the girlfriend.

N.M. Stat. Ann. § 30-3-16(A), (C). Mr. Calvert-Cata doesn't dispute the existence of a romantic relationship. But he denies the presence of enough evidence to find that he caused the girlfriend's injury.[5]

---

2010); *United States v. Oquendo-Rivera*, 586 F.3d 63, 66–67 (1st Cir. 2009); *United States v. Alaniz-Alaniz*, 38 F.3d 788, 792 (5th Cir. 1994).

[5]    Mr. Calvert-Cata also insinuates that the district court "back[ed] into" this finding based on what the girlfriend had said. Appellant's Opening Br. at 26–27, 29. But Mr. Calvert-Cata doesn't develop this insinuation into a distinct argument, and we take the district court at its word.

**4.     The district court didn't clearly err by finding that Mr. Calvert-Cata had strangled the girlfriend.**

As noted, the district court made

- findings based in part on the girlfriend's out-of-court statements and

- alternative findings without considering those statements.

We conclude that even without the out-of-court statements, the district court could reasonably find an aggravated battery based on two potential inferences from the testimony.

First, the court could reasonably infer that someone had tried to strangle the girlfriend. The police officer testified that the girlfriend

- had wept as she ran and

- had sustained bruises on her neck that were consistent with recent strangulation.

The bruises also appeared in photographs, such as this one:



Together, the testimony and photographs allowed a reasonable finding that someone had strangled the girlfriend.[6]

Mr. Calvert-Cata argues that the girlfriend could have sustained the bruises in a car accident. Though this is a possibility, the police officer testified that the bruises were consistent with strangulation. Given the police officer's testimony and the photographs, the court could reasonably discount the possibility of a car accident.

Second, the court could reasonably infer that Mr. Calvert-Cata had been the person who had strangled the girlfriend.

The police officer testified that he had found the girlfriend in a dark rural area, fleeing from a nearby car. The police determined that the car had been registered to Mr. Calvert-Cata, and there's no evidence of anyone else who might have been in the car with the girlfriend. The district court thus reached a plausible conclusion that Mr. Calvert-Cata was the person who had strangled the girlfriend.

---

[6] Mr. Calvert-Cata argues that

- the girlfriend's demeanor showed her mental state (rather than the attacker's) and

- the bruising doesn't necessarily show intent.

But the factfinder could reasonably infer that the person who had strangled the girlfriend had intended to cause harm.

7

Mr. Calvert-Cata argues that this evidence doesn't show that he was the person who strangled the girlfriend. For example, he questions the existence of evidence that "the woods were completely unpopulated." Appellant's Opening Br. at 28. But the police officer testified that the area had "nothing but treeline" and was a "very extreme rural area." R. vol. 1, at 145. Based on this evidence, the district court could reasonably regard the area as unpopulated.

Mr. Calvert-Cata also questions the finding that the girlfriend had been in the car. But the police officer testified that the girlfriend had come from the direction of the car, which was just thirty seconds to a minute away. Given the proximity of Mr. Calvert-Cata's car, the district court could reasonably rely on his failure to explain how the girlfriend could otherwise have sustained severe bruises in an extremely rural area. So the district court could reasonably find that the girlfriend had come from the car.

Granted, Mr. Calvert-Cata didn't need to provide an alternative explanation of events. But "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574

(1985). At a minimum, the district court could reasonably find an aggravated battery based on the plausibility of the government's account.[7]

Finally, Mr. Calvert-Cata argues that when the court found that the girlfriend had been in the nearby car, the court must have relied on her out-of-court statements. We disagree. The police officer testified that the girlfriend had been in the car, and he didn't necessarily rely on her out-of-court statements. For example, the police officer could have inferred that the girlfriend had been in the car because

- she had fresh bruises,

- she was crying and running frantically from the direction of Mr. Calvert-Cata's car, and

- Mr. Calvert-Cata's car was nearby.

On the other hand, the police officer might have relied on the girlfriend's out-of-court statements. But the police officer didn't say what he was

---

[7]     Mr. Calvert-Cata argues that we implicitly concluded in *United States v. Jones* that the non-hearsay evidence was inadequate to find a violation. Appellant's Opening Br. at 30. But in *Jones*, we didn't address sufficiency of the non-hearsay evidence. "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Webster v. Fall*, 266 U.S. 507, 511 (1924); *see United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37–38 (1952) (stating that a prior opinion's implicit resolution of an issue doesn't constitute "binding precedent" when the issue wasn't discussed in the opinion or raised by the parties).

relying on. We can't assume that the police officer was relying on the girlfriend's out-of-court statements.

\* \* \*

When we view the evidence favorably to the government, we conclude that the district court didn't clearly err by relying on the non-hearsay evidence to find an aggravated battery against a household member. So we affirm the district court's revocation of supervised release.

Entered for the Court


Robert E. Bacharach
Circuit Judge